**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

UNITED STATES OF AMERICA,

    - against -                              12 CR 626 (SJ)

ALEXANDER FISHENKO, et al.,

                  Defendants.
----------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR A HEARING ON VIOLATIONS OF THE**
**<u>ATTORNEY-CLIENT PRIVILEGE</u>**


LEVITT & KAIZER
40 Fulton Street, 23rd Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Defendant*
*Alexander Fishenko*

The government violated the defendants' attorney-client privilege by interviewing attorney Jamie Joiner about ARC, Mr. Fishenko and ARC's employees (collectively referred to as "ARC"). Looking back, the government now contends that the information it extracted from Joiner was not privileged; that Mr. Fishenko waived his privilege; and that if in fact the government violated the privilege, the appropriate remedy is for the Court to "simply limit Joiner's trial testimony accordingly." Gov. Memo at 7. These arguments are flawed. The defense requests an evidentiary hearing to establish the full extent of the Sixth Amendment and ethical violations, and that the Court then fashion an appropriate remedy.

A. **The Government and Joiner wrongly shared privileged communications and information.** The government mischaracterizes the defense argument, stating that our position is that "all of the information" Joiner provided the government was privileged including her personal background and the chronology of her representation of ARC (Gov. Memo at 4). In fact we have asserted privilege only as to the statements made to Joiner by ARC's employees to elicit and clarify legal advice and the "legal advice" that she gave. Def. Memo at 3-4. The government next argues that the Voluntary Self-Disclosure ("VSD") form filed by ARC with the Department of Commerce was not privileged because it is a publicly filed document (Gov. Memo at 4). The defense did not claim that the filed document is privileged. Rather, the government and Joiner violated privilege by discussing the confidential communications by which the VSD was drafted, including (among other things) Joiner's assertion that Mr. Fishenko provided most of the information included in the VSD and her claim that she repeatedly

communicated to ARC the importance of preparing the VSD accurately and "grilled them almost to the point of alienating them." Def. Memo at 3, quoting 302 at 2-3.

The government then argues that it did not violate privilege by discussing with Joiner the September 29, 2011, training session Joiner had with ARC at which she utilized a PowerPoint demonstration (titled "Compliance with U.S. Export Controls and Sanctions") to explain export law to ARC and its employees because it "reveals no confidential communications between Joiner and Fishenko or Arc." Gov. Memo at 5. The government's argument in this regard is curious, considering it took precisely the opposite position in *Families for Freedom v. U.S. Customs and Border Protection*, 797 F. Supp. 2d 375, 395-96 (S.D.N.Y. 2011). In that case, the non-profit plaintiff sought FOIA discovery of two government training memoranda of the U.S. Customs and Border Protection ("CBP"). The government successfully argued that the attorney-client privilege exempted these memoranda from production because they were "created by agency attorneys for the purpose of imparting legal advice to employees of the agency," which the government characterized as "quintessential attorney-client communications that are shielded by the attorney-client privilege and FOIA":

> In both cases, CBP withheld documents (bearing Bates numbers US000817-000826, and US000827-866) that were created by attorneys within CBP's Office of Assistant Chief Counsel, Training, and which contain legal analysis and guidance provided to Border Patrol agents regarding the use of race or ethnicity in the execution of their law enforcement duties, as well as the attorneys' analysis of case law concerning the use of racial profiling in law enforcement activities. Lewandowski Decl. ¶¶ 16-17. These documents – created by agency attorneys for the purpose of imparting legal advice to employees of the agency – are quintessential attorney-client communications that are shielded by the attorney-client privilege and FOIA Exemption 5. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 495 (Fed. Cl. 2009) ("Communications between a government agency and government agency

counsel . . . are included within the ambit of the attorney-client privilege.").

Gov. Memorandum in Support of Summary Judgment on Exemptions (available on SDNY Pacer, Case No. 10-cv-2705, Doc. 26) at 19. The district court agreed with the government, finding the memoranda exempt from disclosure because they were "'created by agency attorneys for the purpose of imparting legal advice to employees of the agency,' and consist of legal analysis and guidance." 797 F. Supp. 2d at 396 (footnote omitted).

The PowerPoint demonstration that Joiner showed to ARC in September 2011 was created to impart "legal advice" to ARC and its employees and consisted of "legal analysis and guidance," and thus was a "quintessential attorney-client communication[] that [is] shielded by the attorney-client privilege." The government's position in *Families for Freedom* trumps its position here.

The government response proceeds to ignore altogether its extensive discussions with Joiner regarding the numerous topics about which she advised ARC and her communications with ARC's principal and employees including, at least,[1] the following:

- She lectured ARC regarding export controls, export control classification numbers (ECCNs), export license requirements, and end user requirements by country as well as risk of diversion by third countries. 302 at p.2.
- She said she assisted Mr. Fishenko with the preparation of a Voluntary Self-Disclosure (VSD) letter. *Id.*
- She offered that Mr. Fishenko provided most of the information for the VSD, that she emphasized the importance of being truthful on that document and that she "grilled them almost to the point of alienating them." *Id.*
- Asked whether she recalled anything "regarding why ARC initially provided Izhevsky Radio Plant as an end user and later switched to JSC Experimental Facility," Joiner related that both Mr. Fishenko and

---

[1]    We do not accept that the FBI 302 memorializing the government's interview with Joiner is complete, accurate and self-proving.

defendant Alexander Posobilov told her that "this was a result of confusion with an earlier order and that she did not recall anything additional of note." *Id.* at 3.

- She discussed end users, the importance of asking questions, not self-blinding, and looking for red flags." *Id.* at 4.
- She discussed the importance of obtaining end user forms even for EAR 99 parts "as a best practice to make sure the parts don't end up in the wrong hands or in sanctioned countries." *Id.*
- She discussed statements by ARC's employees to her reflecting the "conflict between customer service and export compliance" with respect to end user forms. *Id.*
- She communicated to ARC "real world examples of export cases prosecuted by the US government." *Id.*
- She explained "the significance of military versus civilian end users with Posobilov and Fishenko 'ad nauseum.'" *Id.*
- She explained that Fishenko communicated with Joiner while he drafted an export compliance manual. *Id.* at 5.

We anticipate that one of the government's principal tactics at trial will be to exploit this unlawful seizure of attorney-client communication to argue that the defendants acted willfully because, in fact, Joiner, through her legal advice, schooled ARC in the finer points of export compliance, and Fishenko and ARC's employees actively engaged Joiner in a continuing discussion regarding what they could and could not do. In addition, Joiner told the government that Fishenko provided most of the information for the VSD, a document that the government has repeatedly alleged is false. *See, e.g.,* Doc 3 at p.4. 126-1 at 4. The government's denial that any of this is privileged is a constructive admission that its interview with Joiner violated ARC's attorney-client privilege.

**B.** **ARC has not waived its attorney-client privilege with regard to Joiner's representation**. The government argues that Fishenko (though not ARC's other employee-defendants, each of whom joins this motion) waived the attorney-client privilege "by affirmatively relying on his retention of Joiner as a defense during the

course of this litigation." Gov. Memo. at 5. The government grounds this argument in the initial bail proceedings conducted in Houston, when Mr. Fishenko's prior counsel "cross-examined the government's witness regarding Arc's retention of Joiner in an attempt to demonstrate that Fishenko lacked the requisite intent to violate applicable export laws or to obstruct justice." Gov. Memo at 6.[2] The government's claim that these questions waived privilege and therefore permitted Joiner to vouchsafe to a receptive government her confidential communications with ARC is preposterous. Fishenko's then-attorney did not impart privileged information by simply asking a government witness whether ARC had hired counsel to advise it regarding export law, without eliciting *what* information or advice was imparted or *what* ARC said to her.[3] Furthermore Fishenko himself did not testify at the hearing, let alone argue that he acted in a good faith reliance on advice of counsel. Essentially the government's argument is, "Because your previous lawyer asked a government witness at the initial bail hearing whether he knew ARC had hired a lawyer to advise ARC regarding export law, you have now waived your attorney-client privilege, at all subsequent proceedings in this case, regarding every confidential thing she said to you and every confidential thing you said to her regarding the advice she gave you." To state this argument is to refute it.

Neither of the principal cases cited by the government remotely supports its position: In *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), in which the defendant was charged with securities fraud and making false statements to the SEC, the

---

[2]     The government's further argument – that Fishenko might decide to call Joiner at trial (*see* Gov. Memo at 6) – is irrelevant; if he does call her then of course he would waive privilege, but he has not done so, and so he has not waived his privilege.
[3]     The witness, Crosby Houpt, repeatedly denied knowing whether ARC had retained counsel to train its employees regarding compliance (Ex. C to Gov. Memo at 101).

Second Circuit held that the district court properly ruled, in response to defendant's *in limine* motion, that the defendant would waive the attorney-client privilege and therefore could be questioned about the legal advice his lawyer gave him, were he to testify that he believed his conduct was legal.

In *United States v. Locascio***,** 357 F. Supp. 2d 536 (E.D.N.Y. 2004), the court held – again in response to an *in limine* motion – that should the defendant testify that he relied on his attorney's assertions that his advertisements complied with Federal Trade Commission (FTC) disclosure standards, then he would be deemed to have waived his attorney-client privilege with respect to his conversations with his attorney regarding the ads in question as well as with respect to his conversations with predecessor counsel regarding a previous set of ads to which the same FTC standard applied.

These cases support a finding that the privilege was not waived here. In both cases, the court ruled that ***the defendant's*** testimony regarding his good faith reliance on counsel's advice would waive the privilege. Here, Mr. Fishenko did not testify at the bail hearing and no substantive testimony was even forthcoming from the witness – who denied knowing anything about Fishenko's retaining of counsel.[4]

---

[4] The Second Circuit in *Bilzerian* underscored that it was the *defendant's testimony* that would waive the privilege, and that the defendant remained free to assert his argument through opening and closing statements and through examination of witnesses:

> [T]he district court's ruling in the instant case did not prevent defendant from denying criminal intent; the district judge merely said that *Bilzerian's own testimony* as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with his attorney. Defendant was free to deny criminal intent either without asserting good faith *or to argue his good faith defense by means of defense counsel's opening and closing statements and by his examination of witnesses*.

*Id.* at 1293 (emphasis added).

Furthermore, in no case of which we are aware has a waiver been found simply because a witness was asked a question, let alone was the mere asking of a question at one proceeding deemed a blanket waiver of the privilege for all purposes and for all times. On the contrary, the rule that a defendant may not use the privilege as both a "shield and a sword" is limited to "when defendant asserts a claim that in fairness requires examination of protected communications." *Bilzerian*, 926 F.3d at 1292. By no logical stretch can the government assert that "in fairness" it was proper to interview Joiner about privileged communications because at the bail hearing predecessor counsel asked a witness whether he was aware that ARC had hired a lawyer to advise it regarding export laws.

Finally, we observe that in both of these cases, the waiver issue was addressed via motion *in limine*, which is a fit way to determine an issue as important as waiver of the attorney-client privilege. Here, by contrast, the government took it upon itself to interview Joiner about privileged matters without notifying either the Court or defense counsel. Having done so in derogation of Mr. Fishenko's rights, the government must now be denied the benefit of its wrongdoing.

**C. The appropriate remedy is a full hearing to determine the extent of the breach and then to impose sanctions sufficient to deprive the government of any benefit.** In our opening memorandum we request discovery and a hearing, and cite abundant case law for the Court's authority to fashion a remedy sufficient to assure that the government has not gained a strategic or tactical advantage from its violation of the attorney-client privilege. The government's suggestion that the Court simply forbid the government from introducing privileged evidence at trial (Gov. Memo at 7) does not

account for the possibility that it has already exploited the violations of privilege. For example, Joiner's improper disclosures may have influenced the government's theory of its case; may have provided the government with leads to pursue in its investigation; and/or may have influenced what witnesses the government will call and what questions it will ask, either of its own witnesses or of defense witnesses.

The government cites *United States v. Carollo,* 2011 WL 6935292 (S.D.N.Y. 2011), ostensibly to support its position that "the Court can simply limit Joiner's trial testimony accordingly." *Carollo* supports the defense. The *Carollo* decision post-dated a hearing ordered by the court "to determine if any portion of the government's cases is tainted by improperly obtained evidence." *Id.* at *1. Likewise, this Court should defer any determination of an appropriate remedy until after a hearing at which the history and scope of the violation is developed on the record.

The government must bear the heavy burden of demonstrating that it has not benefited from the breach. *See State v. Fuentes,* 94 Cr L 560*,* 2014 WL 465563 (Wash. S. Ct. February 6, 2014) (en banc) (a violation of privilege "is presumed to cause prejudice to the defendant unless the State can prove *beyond a reasonable doubt* that the eavesdropping did not result in any such prejudice.") (emphasis in original).

Conclusion

For the foregoing reasons, the Court should order the requested discovery and hearings, and, thereafter, fashion an appropriate remedy to redress the government's violation of the defendants' attorney-client privilege.

Dated:  February 24, 2014

Respectfully submitted,

LEVITT & KAIZER
40 Fulton Street, 23rd Floor
New York, New York 10038
(212) 480-4000

by:

_____

RICHARD LEVITT