RICHARD WARE LEVITT*
rlevitt@landklaw.com
NICHOLAS G. KAIZER*
nkaizer@landklaw.com

YVONNE SHIVERS
yshivers@landklaw.com
SENIOR APPELLATE COUNSEL

DEAN SOLOMON
dsolomon@landklaw.com

EMILY GOLUB
egolub@landklaw.com

* ADMITTED IN N.Y., FLA., AND D.C.

LEVITT & KAIZER
ATTORNEYS AT LAW
40 FULTON STREET
23ᴿᴰ FLOOR
NEW YORK, NEW YORK 10038-5077
www.LevittandKaizer.com

TELEPHONE
(212) 480-4000

FACSIMILE
(212) 480-4444

March 12, 2014

Honorable Judge Sterling Johnson
United States District Court
For the Eastern District of New York
225 Cadman Plaza West
Brooklyn, New York  11201

Re:  United States v. Alexander Fishenko
     12-626 (SJ)

Your Honor,

This letter is submitted in follow up to Mr. Fishenko's privilege motion [Doc. 183] and the March 7, 2014 oral argument on the motion.

During oral argument, the Court asked counsel whether there was a retainer agreement reflecting the nature of Jaime Joiner's representation of ARC Electronics, Inc. ("ARC") and its officers and employees. We located three retainer agreements; one dated April 21, 2004, one dated August 18, 2011 and a third dated April 20, 2012. (See annexed, Exhibit A). Ms. Joiner executed a "Termination of Engagement" letter on October 5, 2012.  The retainer letters appear on their face to indicate that Mr. Fishenko retained Ms. Joiner (at the Joiner Firm, PLLC in 2012 and at Baker & Hostetler, LLP in 2004 and 2011) to represent ARC.

We submit, however, that this is not dispositive of the motion, and that for the reasons below Mr. Fishenko may assert the attorney-client privilege in his individual capacity with regard to the subject communications with Ms. Joiner.  Additionally, as co-owner and president of ARC, Mr. Fishenko may, and does, invoke the attorney-client privilege on behalf of ARC.

### A. Mr. Fishenko May Personally Invoke Attorney Client Privilege with Respect to His Communications with Ms. Joiner

Ordinarily, "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the

individual employee." *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 248 (WDNY 2009) (quoting *United States v. International Brotherhood of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997). The attorney-client privilege, however, "does not always reside exclusively with one party." *Id.* at 249. Under the "common interest doctrine," "[w]here two or more persons jointly consult an attorney concerning a mutual concern, their confidential communications with the attorney, although known to each other, will of course be privileged in the controversy of either or both of the clients with the outside world." *Id.* (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 293 (N.D. Ill. 2005)).

Recognizing that the applicability of the common interest doctrine "presents special problems" when applied to corporations and other entities, since such entities must speak and interact with counsel through their agents, "courts have adopted a so-called 'default rule' when determining who may exercise the attorney-client privilege where a corporate officer has consulted with an attorney about matters within the scope of the corporation's business." *Mackenzie-Childs LLC*, 262 F.R.D. at 249 (quoting *Commodity Futures Trade Commission v. Weintraub*, 471 U.S. 343, 348 (1985)). "Under this rule, courts presume that the corporation owns the privilege – rather than the individual corporate representatives, or the individuals and the corporation jointly – and the individuals bear the burden of rebutting the presumption. *Id.* (citing *International Brotherhood of Teamsters*, 119 F.3d at 215; *In Re Bevill, Bresler and Schulman Asset Management Corp.*, 805 F.2d 120, 124-25 (3d Cir. 1986)). This burden is met when the corporate employee or corporate representative "make[s] it clear to corporate counsel that he seeks legal advice on personal matters. *International Brotherhood of Teamsters*, 119 F.3d at 215. Once this burden is met, the individual may "assert a privilege over ensuing communications with corporate counsel." *Id.*

While, generally, the individual could assert the privilege only as to the personal matters for which he sought advice from corporate counsel, and not the general affairs of the corporation, in the context of closely held corporations the rule is more "flexible." *MacKenzie-Childs LLC*, 262 F.R.D. at 250. In the case of closely held corporations, the corporate officer or employee may assert the privilege "where the 'the communication between a corporate officer and corporate counsel specifically focuses upon the individual officer's personal rights and liabilities, ... *even though the general subject matter of the conversation pertains to matters within the general affairs of the company.*" *Id.* (quoting *In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001), quoting *In re Grand Jury Proceedings*, 156 F.3d 1038, 1041 (10th Cir. 1998)) (emphasis added). This would apply, for example, when the corporate officer discusses matters that may impact his personal criminal liability "arising from conduct interrelated with corporate affairs ...." *Id.* (quoting *In re Grand Jury Proceedings*, 156 F.3d at 1041).

Here, Mr. Fishenko's conversations with Ms. Joiner fall into this category because they directly concerned legal advice that could – and in fact did – impact Mr. Fishenko's potential criminal liability arising from conduct interrelated with ARC's corporate affairs. Additionally, Mr. Fishenko states, in his Affidavit submitted with this letter ("Fishenko Aff."), that "[u]pon reviewing one of the relevant retainer agreements," (he did not recall

which) he "questioned Ms. Joiner [as to] why the agreement did not explicitly identify me as the client along with ARC." Fishenko Aff. at ¶ 4. Mr. Fishenko states, "[t]his was important to me, because I understood that I could have personal liability if the export rules were not properly followed and wanted to ensure that she was representing me as well as ARC and that I could speak freely with her about matters that were of concern to me personally and as ARC's principal." *Id.* Ms. Joiner responded that since Mr. Fishenko was the owner of the company "her retainer(s) created an attorney-client relationship with me as well as ARC." *Id.* It was on this understanding that Mr. Fishenko spoke freely with Ms. Joiner about the many areas addressed in the FBI 302 and in our previously submitted papers regarding export licensing requirements, the knowing violation of which may result in personal criminal liability.

### B. Mr. Fishenko Invokes Attorney-Client Privilege on Behalf of ARC

"The power to assert or waive a corporation's attorney-client privilege generally rests with the corporation's management and is exercised by its officers and directors." *Weintraub*, 471 U.S. at 349. Mr. Fishenko, as co-owner and president of ARC, has the authority to invoke the privilege on behalf of ARC and, accordingly, does so. Fishenko Aff. at ¶ 2. "ARC therefore joins my previously filed privilege motion" *Id.*

Respectfully submitted,

Richard Levitt