DSS/HLJ/DR
F.#2012R00387

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

  - against -                                              12 CR 626 (SJ)

ALEXANDER FISHENKO,
ARC ELECTRONICS, INC.,
SHAVKAT ABDULLAEV,
ANASTASIA DIATLOVA,
ALEXANDER POSOBILOV,
SEVENJ TAGHIYEVA and
SVETALINA ZAGON

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANTS' PRETRIAL MOTIONS



LORETTA E. LYNCH
United States Attorney
Eastern District of New York


Daniel S. Silver
Hilary Jager
Assistant U.S. Attorneys,
David Recker
Trial Attorney,
Department of Justice
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 4

   I.  Diatlova's, Taghiyeva's and Zagon's Severance Motion Should Be Denied....................... 4

      A.     Legal Framework ................................................................... 5

      B.     The Cases Should Not Be Severed............................................... 7

   II.  The Court Should Deny the Defendants' Motion To Strike "Surplusage" From the
Indictment         .............................................................................. 14

      A.     Legal Framework ................................................................. 14

      B.     The Challenged Language Referencing the Russian Military Is Relevant ...... 15

   III.  The Court Should Deny The Motion For A Bill Of Particulars........................................ 18

      A.     Legal Framework ................................................................. 18

      B.     A Bill Of Particulars Is Not Warranted ......................................... 20

   IV.  The Defendants' Motions For Additional Discovery ................................................ 22

      A.     Rule 404(b) Notice ............................................................... 22

      B.     Exhibit and Witness Lists......................................................... 22

      C.     Jencks Material………………………………………………….23

      D.     Expert Notice...................................................................... 23

      E.     Brady Material..................................................................... 23

   V.  Fishenko's Supression Motions..................................................................... 23

CONCLUSION.................................................................................................. 26

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to the defendants' pretrial motions.[1]  Specifically, defendants Anastasia Diatlova, Sevinj Taghiyeva and Svetalina Zagon seek to:  1) sever their trials from that of their co-defendants; 2) strike surplusage from the indictment; 3) compel the government to provide a bill of particulars; and 4) set a schedule for the production of 404(b) notice, witness and exhibit lists, Jencks material and <u>Brady</u> material.  (Diatlova, Taghiyeva and Zagon's Memorandum of Law, dated May 7, 2014 (Dkt. # 220) ("Def.'s Joint Mem.")).  In addition, defendant Alexander Fishenko seeks disclosure of all applications and orders issued in connection with searches and surveillance conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA"), and to suppress the fruits of any such searches and surveillance.  (Memorandum of Law in Support of Alexander Fishenko's Pretrial Motions, dated May 7, 2014 (Dkt. # 221) ("Fishenko Mem.")).  Defendant Fishenko also seeks additional disclosures regarding any other searches conducted by the government in connection with this investigation.[2]  Generally, the defendants have indicated that they join in the motions filed by their co-defendants.  However, defendant Shavkat Abdullaev opposes Diatlova, Taghiyeva and Zagon's motion for severance.  (<u>See</u> Memorandum In Response to Certain Arguments Made in "Clerk Defendants'" Memorandum of Law, dated May 13, 2014 (Dkt. # 225) ("Abdullaev Mem.")).

---

[1]    Since the defendants' memoranda exceed seventy pages, the government similarly requests permission to file a brief in excess of the Court's normal page limit.

[2]    Fishenko's motion to discover FISA materials and to suppress the fruits of FISA-authorized searches and surveillance is addressed in a separate classified brief that the government is submitting <u>ex parte</u> and under seal.  (The government will also publicly file a redacted, unclassified version of that brief).  To the extent Fishenko raises additional arguments not encompassed in the government's classified response, those arguments will be addressed below.

For the reasons set forth below, the defendants' motions to sever, strike surplusage, and for a bill of particulars should be denied. The indictment, discovery materials and pretrial proceedings to date have provided more than adequate notice to the defendants regarding the nature of the charges. The indictment itself does not contain any prejudicial extraneous information; rather it sets forth a detailed description of the means, methods and objects of the defendants' conspiracy. In addition, severance is unwarranted. Neither the charges nor the evidence against Fishenko nor defendant Alexander Posobilov is sufficiently dissimilar or prejudicial to the remaining defendants to justify separate trials. Indeed, separate trials would largely result in the presentation of the same testimony and documents twice. Therefore, the defendants' motion for severance should be denied.

BACKGROUND

During the course of the conspiracy, the defendants illegally procured sophisticated microelectronics for Russian government agencies, including military and intelligence agencies, through the Houston-based corporation Arc Electronics, Inc. ("ARC"). Fishenko was President of ARC, and was also part owner of Apex System, L.L.C. ("Apex"), a Moscow-based corporation that obtained microelectronics from ARC. For national security reasons, the export of many of these microelectronics is controlled by the Department of Commerce ("DOC") and the Department of State ("DOS"). Posobilov was ARC's procurement manager, Abdullaev was the shipping manager, and Diatlova, Taghiyeva and Zagon were salespeople who handled client accounts and conducted purchases and sales of microchips.

Communications intercepted during the investigation revealed that a large portion of the technology exported by these co-conspirators was destined for Russian military and intelligence agencies. Correspondence recovered during the course of the investigation revealed

that the Federal Security Service, Russia's domestic intelligence agency, as well as Russian military entities, were the end users of some of the microelectronics exported by ARC.

Throughout the conspiracy, Fishenko and his co-conspirators systematically evaded export laws and defrauded U.S. manufacturers and suppliers by lying about the actual end users and intended applications of the microelectronics they sought to purchase. In addition, ARC often concealed its function as an exporter and re-seller, falsely claiming on its website and directly to suppliers that it manufactured benign commercial products such as traffic lights, when in fact it manufactured no goods whatsoever. Although Fishenko and his employees sent hundreds of shipments containing thousands of controlled parts to Russia, neither ARC nor its associated entities, principals and employees ever obtained an export license from the DOC or the DOS.

ARC typically received requests for microelectronics and other high-tech goods from Russian procurement firms via email. ARC salespeople then contacted various U.S.-based manufacturers and distributors (the "suppliers") via email to inquire about price and availability of the desired goods. When the suppliers responded, they often notified ARC if the item was subject to export controls and also requested end use information, including the identity of the ultimate recipient of the technology and the nature of the intended application. ARC often provided false end use information to induce the suppliers to sell the requested components and to avoid further scrutiny. In addition, in August and September 2011, Fishenko and Posobilov obstructed an anticipated DOC inquiry by falsifying documents and deleting records pertaining to two shipments of controlled transistors to Apex.

On September 28, 2012, a grand jury indicted Fishenko, ARC, Apex, Posobilov, Abdullaev, Diatlova, Taghiyeva and Zagon.[3] Each of the defendants are charged with conspiring to violate the International Emergency Economic Powers Act (50 U.S.C. § 1705) ("IEEPA") and the Arms Export Control Act (22 U.S.C. § 2778) ("AECA"), and to commit wire fraud, all in violation of 18 U.S.C. § 371. Fishenko is also charged with 20 substantive IEEPA offenses in violation of 50 U.S.C. § 1705, one substantive AECA offense in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), obstruction of justice in violation of 18 U.S.C. § 1512(c), conspiring to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A) and (h), and acting as an unregistered agent of the Russian government in violation of 18 U.S.C. § 951. Posobilov is also charged with three substantive IEEPA violations and with obstruction of justice; Abdullaev is also charged with four substantive IEEPA violations; Diatlova is also charged with one substantive IEEPA violation; Taghiyeva is also charged with three substantive IEEPA violations; and Zagon is also charged with three substantive IEEPA violations and one AECA violation. Each of these offenses arise from the defendants' export of microelectronics, via ARC, to Russian end users, as well as the actions they undertook to promote and conceal this conspiracy.

ARGUMENT

I.      Diatlova's, Taghiyeva's and Zagon's Severance Motion Should Be Denied

Defendants Diatlova, Taghiyeva and Zagon (the "moving defendants") seek to sever their trials from that of their co-defendants, arguing that their relatively minor roles in the conspiracy and the "inflammatory and damaging charges" against their co-defendants will cause them to suffer "substantial and undue prejudice in a joint trial." (Def.'s Joint Mem. at 2). In fact, the charges against these defendants arise from the identical set of operative facts and are

---

[3]     In addition, ARC salespersons Lyudmila Bagdikian and Viktoria Klebanova were also charged, and have since pleaded guilty. Apex executives Sergey Klinov and Dmitriy Shegurov, as well as ARC customer Yuri Savin, were also charged and are believed to be overseas.

largely supported by the same evidence as the charges against their co-defendants.  Therefore, this motion should be denied.

A.  Legal Framework

Federal Rule of Criminal Procedure 8(b) provides that an indictment may charge multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  Under the rule, "joinder is proper where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'"  United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (quoting United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990)).  The Supreme Court has consistently reaffirmed "a preference in the federal system for joint trials of defendants who are indicted together" because they promote efficiency and prevent the injustice of inconsistent verdicts. Zafiro v. United States, 506 U.S. 534, 537 (1993).  As the Supreme Court has noted:

It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.  Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit.  Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson v. Marsh, 481 U.S. 200, 210 (1987); see also Bruton v. United States, 391 U.S. 123, 134 (1968) (joint trials conserve funds, diminish inconvenience to witnesses, and avoid delays).

When a defendant seeks to sever a trial under Federal Rule of Criminal Procedure 14(a), the court must balance the efficiency of a joint trial against the possibility of prejudice to the defendant.  See United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003).  Because Rule 8 "authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks and citation omitted).  The defendant has the "'extremely difficult burden' of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial."  United States v. Bellomo, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (citing United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)).  Therefore, a court should sever defendants only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Rittweger, 524 F.3d at 179 (internal quotation omitted); see also United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (defendant must show that a "miscarriage of justice" would result to warrant severance) (internal citation and quotation marks omitted).

The Second Circuit has made clear that a defendant's purportedly minor role, or variation in the quantities of evidence against defendants, are not grounds for severance.  See United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988) ("[I]t is well established that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'") (quoting United States v. Carson, 702 F.2d 351, 366-67 (2d Cir. 1983)).  See also United States v. Corsey, 512 Fed. Appx. 6, 7 (2d Cir. 2013) (quoting An-Lo).  In addition, the Second Circuit has "never recognized the need for severance based on the size of the trial."  United States v. Locascio, 6 F.3d 924, 947 (2d Cir.

1993) (also noting that the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible").  See also United States v. Megale, 363 F. Supp. 2d 359, 368-69 (D. Conn. 2005) (denying severance motion in eight-defendant trial that was predicted to last more than six weeks); United States v. Guillen-Rivas, 950 F. Supp. 2d 446, 457-58 (E.D.N.Y. 2013) (denying severance motion in ten-defendant trial).

Any potential prejudicial "spillover" is typically remediated by the Court's admonition to the jury to consider each defendant's guilt separately.  See United States v. Joyner, 201 F.3d 61, 80 (2d Cir. 2000) .  Moreover, "the possibility that codefendants may mount mutually antagonistic defenses is not itself a ground for severance where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions."  United States v. O'Connor, 650 F.3d 839, 858 (2d Cir. 2011) (internal quotation marks and citation omitted).  See also United States v. Diaz, 176 F.3d 52, 104 (2d Cir. 1999) (affirming denial of severance motion where one co-defendant testified that another co-defendant committed a charged homicide); United States v. Mallay, 712 F.3d 79, 105 (2d Cir. 2013) ("[T]o obtain a severance on the ground of antagonistic defenses, a defendant must show that the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved.") (internal quotation marks and citation omitted).

B.    The Cases Should Not Be Severed

Relying on seven factors identified by Magistrate Judge Levy in a Report and Recommendation that was later adopted by this Court, see United States v. Dowtin, No. 10 CR 657, 2012 WL 7679552 (E.D.N.Y. Nov. 20, 2012), adopted sub nom. United States v. Spicer, No. 10 CR 657, 2013 WL 871952 (E.D.N.Y. Mar. 7, 2013), defendants Diatlova, Taghiyeva and

Zagon assert that severance is appropriate. In <u>Dowtin</u>, Judge Levy found that severance was warranted for three defendants who were not charged with any violent crimes in a racketeering case in which the other defendants were charged with murder and other violent acts. <u>See</u> <u>Dowtin</u>, 2012 WL 7679552, at *4-6.[4] Judge Levy noted that "[f]actors that a court may consider in determining whether severance is warranted include the number of defendants and counts in the indictment; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; defendants with markedly different levels of culpability in the overall scheme; conflicts between defense theories or strategies; and potential prejudice from evidence admitted against co-defendants that is inadmissible or excluded as to a particular defendant." <u>Id.</u> at *2 (internal quotation marks and citation omitted). No one factor is dispositive. <u>Id.</u> Here, despite the defendants' claims to the contrary, an analysis of these factors demonstrates that severance is inappropriate.

First, the defendants incorrectly assert that none of the crimes with which they are charged "are among the most serious in the indictment." (Def.'s Joint Mem. at 13). In fact, they are charged with conspiracy and substantive export violations, as are Fishenko, Posobilov and Abdullaev. These charges and underlying conduct -- the illegal export of controlled commodities, and false statements to suppliers to further that scheme -- constitute the crux of the allegations against all of the defendants in this case. Moreover, the defendants incorrectly claim that they are charged with fewer offenses than the purportedly more culpable defendants. In fact, as Abdullaev points out in his opposition to Diatlova, Taghiyeva and Zagon's severance motion (<u>see</u> Abdullaev Mem. at 5), Zagon is charged in the same number of counts as Posobilov and

---

[4] In reviewing Judge Levy's Report and Recommendation, this Court affirmed the denial of a fourth defendant's severance motion but did not address any objections to Judge Levy's grant of the other three defendants' severance application. <u>Spicer</u>, 2013 WL 871592, at *1.

Abdullaev (five), and Taghiyeva is charged in only one fewer count. Of course, this type of arithmetic is wholly inapposite and no defendant should be severed based on the number of counts in which he or she is charged. Moreover, courts have regularly denied severance motions in cases that involved more defendants and more charged crimes than those at issue here. See, e.g., Megale, 363 F. Supp. 2d at 368-69 (denying severance motion in eight-defendant trial); Guillen-Rivas, 950 F. Supp. 2d at 457-58 (denying severance motion in ten-defendant trial).

Second, while the nature of the charges here are somewhat complex, the defendants are wrong to claim that separate trials would "allow the jury to more easily understand" the evidence. Indeed, at separate trials, just like at a joint trial, the government would admit evidence to establish the existence and operation of the conspiracy to export controlled commodities, the nature of those commodities and their applications, the misrepresentations made by ARC's owners and employees regarding ARC's true function, the identities and affiliations of ARC's overseas customers, and the ultimate object of the conspiracy (i.e., to supply military-grade microelectronics to the Russian government). While certain defendants are charged with participating in certain discrete transactions, the transactions themselves are not particularly complicated (typically involving the domestic purchase and subsequent export of quantities of electronics), are largely supported by documentary evidence, and are not more "prejudicial" than any other transaction at issue. Thus, the complexity of the case does not weigh in favor of severance.

Third, the defendants make incorrect assumptions regarding the relative length of joint and separate trials. The government estimates that its direct case in a joint trial would last roughly two to three weeks. A separate trial involving just Diatlova, Taghiyeva and Zagon would not be significantly shorter. Indeed, nearly every witness who would testify in a joint trial

would also testify in a separate trial involving these defendants. The government would still have to establish the nature, function and objects of the same charged conspiracy. Documentary proof of discrete transactions is not likely to require a substantial amount of trial time. While the moving defendants suggest that they would "stipulate to many of the facts that the government would need to prove against the corporate and Management Defendants," (Def.'s Joint Mem. at 16), this is a hollow promise. Unless the moving defendants are prepared to stipulate to the objects of the conspiracy, it is difficult to fathom how a separate trial for the moving defendants would be streamlined.

Fourth, there are not any disparities in the type or amount of proof sufficient to warrant prejudice. It is simply wrong to conclude that "there will be weeks of evidence . . . having nothing whatsoever to do with" Diatlova, Taghiyeva and Zagon. (Def.'s Joint Mem. at 18). As noted above, the bulk of the government's proof will relate to the methods and objects of the charged conspiracy—proof which is directly related to these defendants' guilt. The money laundering and obstruction charges involving Fishenko and Posobilov are inextricably linked to the charged export scheme. Indeed, Fishenko and ARC are charged with conspiring to promote the export scheme by causing international wire transfers to ARC from its Russian customers. (See Count Twenty-Four). Fishenko and Posobilov are also charged with attempting to obstruct an inquiry by the Department of Commerce by falsifying documents pertaining to one of their exports to Russia. (See Count Twenty-Five). This conduct is not conceptually distinct from the underlying conspiracy with which all defendants are charged, but rather is closely related to it (and is certainly no more inflammatory or prejudicial).

This Court's decision in United States v. Burke, upon which the defendants rely, is not to the contrary. There, the Court granted a severance motion for a defendant charged only

with obstruction of justice from two other defendants charged with, inter alia, a thirty-year racketeering conspiracy and three murders. 789 F. Supp. 2d 395, 396-97 (E.D.N.Y. 2011). In granting severance, the Court relied on the violent nature of the charges against the severed defendants. Id. at 400. Those concerns are not present here.[5]

Fifth, the defendants' varying roles in the scheme do not warrant severance. Diatlova, Taghiyeva and Zagon incorrectly contend that the other defendants are charged with "far more serious crimes." (Def.'s Joint Mem. at 19). This is simply not the case—each of the defendants played key roles in the same conspiracy. Notably, Abdullaev agrees that the moving defendants "exaggerate" his role "while minimizing their own," and notes that, unlike him, the moving defendants "received bonus payments based on the amount of sales they generated." (Abdullaev Mem. at 4). In addition, the fact that Diatlova and Taghiyeva joined the conspiracy in 2011, when it was already underway, is unavailing. (Def.'s Joint Mem. at 19). Zagon, who seeks severance on the same basis, joined ARC in 2008, before the inception of the charged conspiracy. In short, if defendants were entitled to severance based on varying roles in a conspiracy, joint trials would be a rarity.

Sixth, the defendants' purportedly antagonistic defenses do not support severance. "[A]n adversarial stance by a co-defendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." United States v. Cardascia, 951 F.2d 474, 484-85 (2d Cir. 1991). To warrant severance, "defenses must conflict to the point of being

---

[5] Magistrate Judge Gold's Report and Recommendation in United States v. Catapano, also cited by the defendants, is inapposite. There, Judge Gold concluded that a defendant's motion to sever should be granted where the indictment charged two separate but related conspiracies, one of which involved only the moving defendant. See United States v. Catapano, No. 05 CR 229, 2008 WL 2222013, at *17 (E.D.N.Y. May 22, 2008). Here, the indictment charges a single conspiracy involving all of the defendants.

so irreconcilable as to be mutually exclusive . . . [or] when antagonism at the <u>essence</u> of the defense prevails to such a degree . . . that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty."  <u>Id.</u> at 484 (emphasis in original).

Here, the moving defendants assert that they "will likely present as their defense" (presumably through their own testimony, although that is unclear) "that they were wholly unaware of the massive scheme allegedly perpetrated" by their co-defendants, and that they were "misled by the Management Defendants into believing that they were in compliance with all applicable export laws."  (Joint Mem. at 20).  Assuming this is an accurate prediction of the crux of their defense, it is unclear how that testimony will conflict with any defense put forth by Fishenko or Posobilov, let alone conflict to such a degree that the "conflict alone indicate[s] that both defendants [are] guilty."  <u>Cardascia</u>, 951 F.2d at 484.  Indeed, the moving defendants concede that they "do not know what theory of defense will be used a trial by the Management Defendants . . ." (Def.'s Joint Mem. at 21 n.4).  Fishenko and Posobilov are likely to argue that they too made best efforts to comply with export laws.  Those defenses do not conflict.

In addition, the moving defendants assert that, if the government chooses to seek to admit their post-arrest statements at trial, these statements may inculpate Fishenko and Posobilov since the moving defendants referenced Fishenko and Posobilov in their statements. Significantly, Fishenko and Posobilov have not sought severance on this basis.  Regardless, this argument ignores controlling precedent.  The Second Circuit has held that a co-defendant's post-arrest statement may be admitted at a joint trial as long as any explicit reference to another trial defendant is redacted in such a manner as to obscure the fact that the statement referenced the trial defendant and to avoid any obvious indicia of alteration.  <u>See</u> <u>United States v. Jass</u>, 569 F.3d 47, 63-64 (2d Cir. 2009).  Such a procedure would cure any potential prejudice here.

Seventh, a joint trial would not precipitate any prejudicial "spillover." The potential for such prejudice occurs when evidence is admitted at a joint trial which would be inadmissible at a separate trial. See, e.g., United States v. Williams, 181 F. Supp. 2d 267, 301-02 (S.D.N.Y. 2001). However, the "introduction of evidence relating to joined defendants does not require severance in every case . . . . Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater." Cardascia, 951 F.2d at 483. Here, it is difficult to ascertain any significant proof that would be admissible at a joint trial that would not be similarly admissible at a separate trial. Proof of the existence, methods and objects of the charged conspiracy, as well as the respective roles of each of the moving and non-moving defendants, would all be admissible at a separate trial of Diatlova, Taghiyeva and Zagon. Similarly, the military applications of the sophisticated electronics that they shipped would also be admissible, as would the government's proof as to the end users that received the goods. While the moving defendants are not charged in each specific export transaction, the documents reflecting those transactions are not prejudicial, nor are they different in kind from the transactions in which the moving defendants personally participated.

Diatlova, Taghiyeva and Zagon argue that the government's proof that Fishenko acted as an unregistered agent of the Russian government will entail significant prejudicial spillover. (Def.'s Joint Mem. at 23). However, to establish that offense, the government must simply prove that Fishenko "agree[d] to operate within the United States subject to the direction or control" of the Russian government, without registering as a foreign agent. See 18 U.S.C. § 951. The government will establish this offense by proving that Fishenko knowingly and illegally procured microelectronics for the Russian government through ARC and Apex. Thus,

this conduct is substantially similar to the conspiracy with which all of the defendants are charged—the illegal export of controlled commodities. Therefore, the defendants will not suffer spillover prejudice as a result of this charge, particularly in light of the Court's ability to give appropriate limiting instructions.

Finally, the moving defendant's assertion that separate trials would conserve resources and promote efficiency is wholly misplaced. Separate trials would literally result in the Court hearing the same evidence twice; almost all of the evidence would be duplicative. This result would defy logic, especially where the moving defendants have failed to demonstrate any significant prejudice from a joint trial.

II.   The Court Should Deny the Defendants' Motion To Strike "Surplusage"
      From the Indictment

The defendants next move pursuant to Rule 7(d) to strike certain language from the Indictment as prejudicial surplusage. (Def.'s Joint Mem. at 26-36). For the reasons set forth below, the motion should be denied.

A.   Legal Framework

Motions to strike surplusage from an indictment are subject to an "exacting standard," and "will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990) (internal citation and quotation marks omitted); see also United States v. Mulder, 273 F.3d 91, 99-100 (2d Cir. 2001) (same); United States v. Jordan, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980) ("[T]he standard under Rule 7(d) has been strictly construed against striking surplusage."). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." Scarpa, 913 F.3d at 1013 (quoting United States v. DePalma, 461 F.Supp. 778, 797 (S.D.N.Y. 1978)).

The defendants claim that the Court should strike multiple references to Russia and to "Russian military and intelligence agencies" from the indictment.  (Def.'s Joint Mem. at 28-32).  However, this language is directly relevant to the methods and objects of the charged conspiracy.

Specifically, the defendants challenge the following language from Paragraph 2 of the Indictment:  "MIG Engineering Corporation ("MIG Engineering"), Saransk Electronic Corporation ("Saransk") and JSC Arsenal Corporation ("Arsenal") were affiliates of APEX. APEX, MIG Engineering, Saransk and Arsenal were engaged in the procurement of microelectronics primarily for Russian government agencies, including Russian military and intelligence agencies."  (Indictment at ¶ 2 ("Paragraph 2")).  Apex, in which defendant Fishenko maintained an ownership interest, is a named defendant in the Indictment and obtained controlled microelectronics from ARC on behalf of Russian government agencies.  Several of the defendants, including Fishenko, had direct dealings with Apex and its affiliates.  The government expects to admit proof of this relationship, and the relationship between Apex and its affiliates, at trial.  Indeed, the obstruction of justice charge in Count Twenty-Five directly relates to Fishenko and Posobilov's attempts to obscure the relationship between Apex and its affiliates and the Russian military.

Proof of the identities of Apex's affiliate companies is analogous to the use of aliases by individual defendants, which courts have repeatedly held should not be stricken as surplusage.  See United States v. Elson, 968 F. Supp. 900, 909 (S.D.N.Y. 1997) ("aliases and nicknames should not be stricken from an Indictment when evidence regarding those aliases or

nicknames will be presented to the jury at trial").  Moreover, the names of these affiliates are not

prejudicial.

                The defendants also object to the third sentence of Paragraph 2, and in particular

the phrase, "including Russian military and intelligence agencies," which also appears in

Paragraphs 4, 13, 15 and 20, as well as the phrase Russian "government and military" which

appears in Paragraph 22.  The defendants incorrectly claim that such phrases have "nothing to do

with the actual offenses charged" and merely add "prejudicial color" to the case.  (Def.'s Joint

Mem. at 28-29).  In fact, these phrases are directly relevant to the charged conspiracy.  <u>See</u>

<u>DePalma,</u> 461 F. Supp. at 797 ("If evidence of the allegation is admissible and relevant to the

charge, then regardless of how prejudicial the language is, it may not be stricken.").  The

defendants' scheme involved providing false end user and end use information to domestic

suppliers to obscure the true military applications of the commodities.  The fact that the parts

were destined for Russian military and intelligence agencies is directly relevant to the methods

and purpose of the conspiracy.  Indeed, in some circumstances, licensing requirements are

dependent on whether the technology exported is intended for military or civilian applications.

Thus, because the challenged language is relevant to the government's proof of the existence and

operation of the conspiracy, it must not be stricken.  <u>See United States v. Umeh</u>, 762 F. Supp. 2d

658, 666 (S.D.N.Y. 2010) (reference to the FARC terrorist organization was relevant to

explaining the scope and purpose of the conspiracy and therefore was not stricken); <u>see also</u>

<u>United States v. Stein</u>, 429 F. Supp. 2d 633, 646-47 (S.D.N.Y. 2006) (allegations relevant to the

government's theory of the conspiracy not stricken), <u>United States v. Saade</u>, No. S1 11 CR 111,

2012 WL 2878087, at *6-7 (S.D.N.Y. July 11, 2012) (references to the Taliban not striken

though they "may cast defendants in a negative light" because they "elucidate the scope of the conspiracy").

The defendants' objection to the phrase in Paragraph 16, "These advanced microelectronics could not be produced in Russia" is similarly misplaced. The fact that these microelectronics could not be produced in Russia is relevant to the defendants' motive to obtain the parts; indeed it is a primary reason for the existence of the scheme. Finally, the statement in paragraph 26 regarding the defendants' efforts to delete information from Apex's website "that revealed APEX's relationship with the Russian military, including images of missiles and military aircraft and a certificate stating that APEX affiliate Arsenal was a certified supplier of electronics for the Russian Ministry of Defense" is directly relevant to the obstruction charge in Count Twenty-Five. Indeed, obscuring the relationship between Apex and its affiliates and the Russian military was essential to the defendants' continued operation of the scheme and was also the primary reason that they attempted to obstruct justice.

The defendants also object to paragraphs 8-12 of the Indictment, which provide general legal background for several of the applicable statutes. The defendants contend that these paragraphs should be stricken because some of the terms, such as "national security" are irrelevant and unfairly prejudicial. (Def.'s Joint Mem. at 28-32). In addition, they argue that they should be stricken because they constitute legal conclusions. (Id. at 32-35). The government maintains that the summary of the applicable statutes in paragraphs 8-12 are accurate statements of the law, are not unduly prejudicial, and will assist the jury in understanding the factual allegations in the indictment. Nonetheless, the government submits that the Court should deny with leave to renew this aspect of the defendant's motion because the Court has not yet determined how it will charge the jury. Thus, it is not yet evident that the

statements of law summarized in the indictment are duplicative or inaccurate. See <u>United States</u> <u>v. Quinn</u>, 401 F. Supp. 2d 80, 98 (D.D.C. 2005) (denying with leave to renew motion to strike statements of law in the indictment and noting that "[T]he indictment's description of the laws and regulations would only become irrelevant and, potentially, prejudicial if the Court were prepared to give contrary jury instructions, but that stage of the case has not yet been reached."). See also <u>Saade</u>, 2012 WL 2878087, at *7 (where it was not Court's practice to provide jury with the indictment at the outset of trial, motion to strike surplusage was deemed premature and denied).

III.     <u>The Court Should Deny The Motion For A Bill Of Particulars</u>

       The defendants also move for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). (Joint Def.'s Mem. at 36-42). Specifically, they ask the government to identify each instance in which a co-conspirator provided false end use or licensing information in furtherance of the conspiracy, to identify any emails containing such information, and to specify the date, sender and recipient of such information. (<u>Id.</u> at 10). In addition, they ask the government to specify any overt acts beyond those set forth in the indictment that the government intends to prove at trial, and to provide particulars of those additional acts. (<u>Id.</u>). As described below, the defendants have been provided with more than enough information to allow them to prepare their defenses and to avoid unfair surprise. Accordingly, the Court should deny this motion.

    A.     <u>Legal Framework</u>

       Under the Federal Rules of Criminal Procedure, an indictment need only set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c). Additional details, in the form of a bill of particulars, are not appropriate

unless the indictment is too vague to inform the defendant of the nature of the charges so as to allow the preparation of a defense, avoid unfair surprise, and preclude double jeopardy.  See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990).  If the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not warranted.  See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Urso, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005).  "[T]he burden is on the defendant to show that non-disclosure of the requested particulars will lead to prejudicial surprise at trial or will adversely affect his rights."  United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

It is improper to use Rule 7(f) as a mechanism to limit the government's evidence, or to flush out the prosecution's theories in advance of trial.  See Urso, 369 F. Supp. 2d at 272 ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, No. 91 CR 0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").  The ultimate test of the appropriateness of a bill of particulars is whether the information is necessary, not whether it is helpful, to the defendant.  See United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994).

B.     A Bill Of Particulars Is Not Warranted

"[I]n determining whether to order a bill of particulars, a court must examine the totality of the information available to a defendant, both through the indictment and through pre-trial discovery."  United States v. Mostafa, 965 F. Supp. 2d 451, 465 (S.D.N.Y. 2013).  In this case, the defendants have been provided with, and have access to, information and documents that, collectively, provide them with more than enough information to allow them to prepare a defense and prevent surprise at trial.  See GAF Corp., 928 F.2d at 1260.

First, the Indictment itself provides the defendants with the necessary information to apprise them of the charges.  In fact, "indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms" are generally sufficient.  See United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973).  Here, the government has provided a detailed narrative indictment that does more than merely track the language of the statute.  It outlines the government's theory of the case and includes a description of the fraudulent scheme, the objects of the conspiracy, the manner and means of the conspiracy, and identifies a non-exhaustive list of overt acts.  In addition, following the defendants' arrests in October 2012, bail hearings were conducted at which the government presented testimony and introduced extensive documents regarding the nature and operation of the scheme.

Second, the government has provided discovery materials in a well-organized fashion, and has produced the vast majority of documents in electronically searchable formats. At the outset of the case the government identified the documents most relevant to each substantive violation charged in the indictment and provided those materials, organized by folder specific to each count, on DVDs to the defendants.  In addition, the government provided each

defendant with a DVD containing additional documents and recordings specific to each defendant, which reflected the defendant's role in the charged offenses and evidence of their willful conduct.  The government also provided a detailed inventory to assist the defense in reviewing copies of seized documents and computers and, for several defendants, have created working copies of the individual defendants' computers containing their respective email and Quickbooks archives.  While the defendants are correct that there is extensive classified discovery, those materials are also available in electronic, searchable form, and are organized by defendant.

The defendants' claim that, without a bill of particulars, they will be forced "to defend each of the thousands of transactions in which they engaged," (see Joint Def.'s Mem. at 40), should be rejected.  As noted above, the government has already identified hundreds of relevant documents and recordings specific to both the particular charged transactions and to each defendant's guilt.  It has also organized and indexed the remainder of discovery materials. The law is clear that a defendant is not entitled to disclosures as to how, when, where or with whom an alleged conspiracy took place.  See United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991) (bill of particulars not required to identify the specific activities by which defendant furthered conspiracy).  Consequently, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (collecting cases). The defendants fail to demonstrate how the additional particulars sought—including each and every email the government will rely upon at trial—are necessary to prepare a defense.  "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed

the crimes charged, or a preview of the Government's evidence or legal theories."  United States

v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) (citation omitted).  Indeed, it is well-

established that the government must not be compelled "to give a preview of its evidence and

legal theories lest the defendant tailor his testimony to explain away the Government's case."

United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted).

IV.    The Defendants' Motions For Additional Discovery

The defendants also move for certain additional discovery.  (Def.'s Joint Mem. at

42-46; Fishenko Mem. at 19).  Specifically, they seek disclosure of Rule 404(b) notice, Brady

material and Jencks Act material, as well as witness and exhibit lists.  The government will agree

to make these disclosures pursuant to the schedule set forth below, if the defendants agree to

reciprocal disclosures.

A.    Rule 404(b) Notice

The defendants seek disclosure of any 404(b) notice 90 days in advance of trial.

The government is willing to file any 404(b) notice 45 days in advance of trial, which is

significantly earlier than is typical.

B.    Exhibit and Witness Lists

The defendants also seek disclosure of the government's exhibit and witness lists

90 days before trial.  While three months is far longer than necessary, the government will agree

to provide its exhibit list and witness list (subject to revision as additional information becomes

available) 30 days before trial if the defendants agrees to produce their exhibit and witness lists

two weeks before trial.

C.    Jencks Material

The defendants also ask the Court to set a schedule for the production of Jencks Act materials, see 18 U.S.C. § 3500.  Consistent with the statutory text, the Second Circuit has repeatedly ruled that a district court may not order the early disclosure of 3500 material.  See United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) ("We have previously held that the Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements.").  Nevertheless, the government will agree to disclose the bulk of its 3500 material two weeks before trial.

D.    Expert Notice

Fishenko asks the Court to set a schedule directing the government to provide expert notice pursuant to Federal Rule of Criminal Procedure Rule 16(a)(1)(G).  The government will agree to provide expert notice 45 days in advance of trial, provided the defendants agree to provide any expert notice 30 days in advance of trial.

E.    Brady Material

Finally, the government is aware of and has already complied, on an ongoing basis, with its obligations pursuant to  Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. The government will continue to comply with its obligation to produce such information in a timely manner.

V.    Fishenko's Supression Motions

Finally, as noted above, Fishenko has filed a motion to discover FISA materials and to suppress the fruits of any FISA-authorized searches and surveillance.  Fishenko also seeks additional disclosures regarding any other searches or surveillance the government conducted in this investigation.  The government has responded to Points I (B) and I (C) of Fishenko's motion

in an <u>in</u> <u>camera</u>, <u>ex</u> <u>parte</u> classified brief (the government will also publicly file a redacted, unclassified version of that brief).  The government briefly responds to Fishenko's remaining claims below.

Fishenko contends that the government should be required to disclose whether any searches or surveillance were conducted pursuant to Title VII of FISA (the FISA Amendments Act or "FAA"), 50 U.S.C. § 1881a <u>et</u> <u>seq.</u>, during the course of the investigation. When the government "intends to enter into evidence or otherwise use or disclose" in a criminal case (as well as in other proceedings) against an aggrieved person any "information obtained or derived from" electronic surveillance or physical search of that aggrieved person conducted pursuant to FISA,[6] it must provide notice to that individual.  50 U.S.C. §§ 1806(c); 1825(d); 1881(e).  The government's notice obligations regarding its use of FISA information under Title 50, United States Code, Sections 1806, 1825, and 1881(e) apply only if the government (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person" (3) in a "trial, hearing or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States" (4) any "information obtained or derived from" (5) an "electronic surveillance [or physical search] of that aggrieved person." 50 U.S.C. § 1806(c); <u>see</u> 50 U.S.C. § 1825(d).  Where all five criteria are met, the government will notify the defense and the Court (or other authority) in which the information is to be disclosed or used that the United States intends to use or disclose such information.  The government has previously provided notice of its intent to use against the defendants in this case evidence obtained or derived from electronic surveillance and physical searches under Title I and Title III

---

[6]    An "aggrieved person" is the target of the electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance."  50 U.S.C. § 1801(k).  A person is also aggrieved if his or her "premises, property, information, or material is the target of physical search" or "subject to physical search."  50 U.S.C. § 1821(2).

of FISA, 50 U.S.C. §§ 1801-1812 and 1821-1829.  The government has further advised the defense that it does not intend to use any information obtained or derived from searches or surveillance authorized under Title VII of FISA, as to which a defendant is an aggrieved person.  See Government's Letter dated September 6, 2013 (Dkt. # 144).  Since all five criteria above have not been met with respect to Title VII of FISA, the government is not required to provide any additional notice to the defense.[7]

       To the extent that the defendants seek additional disclosures regarding certain investigative techniques unrelated to FISA surveillance, the government hereby confirms that it did not use any tracking devices, or "stingray" or "triggerfish" devices, nor did it conduct any searches via ruse in connection with this investigation.  The government has reviewed the claims of "suspicious events" set forth in Fishenko's Affidavit dated May 7, 2014, and none of the events set forth therein appear to relate to the government's investigation.   Nonetheless, in and abundance of caution the government makes the following additional disclosures (some of which are likely apparent from the discovery materials previously provided).

       The government confirms that it occasionally conducted physical surveillance of the defendants in public places during the course of the investigation.   In addition, in April 2012 agents from the DOC interviewed Fishenko at ARC in connection with the government's investigation.  The government also discloses that the Federal Bureau of Investigation ("FBI") met with a DHL employee who provided shipping services to ARC and frequently visited ARC's offices.  In response to the FBI's requests, after visiting ARC's offices in May 2011, the DHL

---

[7]   Insofar as the defendants seek additional information regarding electronic surveillance and physical searches of the defendants conducted pursuant to Titles I and III of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801-1812 and 1821-1829, the government will address those arguments in its classified ex parte response to the defendants' motion to discover FISA materials.

employee provided information to the FBI on one occasion about the general layout of ARC's office space, the locations of various employees' desks, and whether there appeared to be internal security cameras or alarm devices.

Finally, in September 2013, in connection with the investigation, a Special Agent with the DOC placed a consensually monitored telephone phone call to ARC and asked to speak with the shipping manager. Abdullaev answered the phone and identified himself as "Stan." In response to questions, Abdullaev stated that he filled out all of the Shipper's Export Declarations for ARC.

The government is unaware of any additional searches or surveillance beyond those previously identified.

<u>CONCLUSION</u>

For the reasons set forth above, the defendants' pretrial motions should be denied.

Dated:      Brooklyn, New York
            June 23, 2014

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                             By:      /s/ Daniel S. Silver
                                        Daniel S. Silver
                                        Hilary Jager
                                        Assistant United States Attorneys

                                        David Recker
                                        Trial Attorney
                                        Counterespionage Section
                                        Department of Justice