**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:12-cr-00626 (SJ) |
| v. | |
| ALEXANDER FISHENKO,<br>ARC ELECTRONICS, INC.,<br>APEX SYSTEMS, LLC,<br>SHAVKAT ABDULLAEV,<br>LYUDMILA BAGDIKIAN,<br>ANASTASIA DIATLOVA,<br>VIKTORIA KLEBANOVA,<br>SERGEY KLINOV,<br>ALEXANDER POSOBILOV,<br>YURI SAVIN,<br>DMITRIY SHEGUROV,<br>SEVINJ TAGHIYEVA and<br>SVETALINA ZAGON, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
ANASTASIA DIATLOVA, SEVINJ TAGHIYEVA AND SVETALINA ZAGON'S
MOTION FOR A SEPARATE TRIAL; TO STRIKE PREJUDICIAL SURPLUSAGE
FROM THE INDICTMENT; FOR A BILL OF PARTICULARS; AND FOR RULE 404(B)
EVIDENCE, JENCKS ACT MATERIAL, BRADY MATERIAL AND THE
<u>GOVERNMENT'S EXHIBIT AND WITNESS LISTS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................. iii

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

I.     THE SUBSTANTIAL RISK OF PREJUDICE AND JUDICIAL EFFICIENCY WEIGH
STRONGLY IN FAVOR OF SEVERANCE PURSUANT TO RULE 14 .................................... 1

      A.     Number of Defendants and Counts in the Indictment ........................................... 3

      B.     Complexity of the Indictment ............................................................................... 5

      C.     Estimated Length of Trial ..................................................................................... 5

      D.     Disparities in Amount or Type of Proof Offered Against Defendants .............................. 8

      E.     Defendants with Markedly Different Levels of Culpability in the Overall Scheme......... 11

      F.     Antagonistic Defenses ......................................................................................... 13

      G.     Prejudicial Spillover ........................................................................................... 13

      H.     Judicial Economy ................................................................................................ 16

II.     DEFENDANTS' REQUEST FOR A LIMITED BILL OF PARTICULARS SHOULD
BE GRANTED ........................................................................................................................ 16

III.     THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE THE
REQUESTED DISCOVERY ................................................................................................... 18

      A.     Rule 404(b) Evidence .......................................................................................... 18

      B.     Exhibit and Witness List ...................................................................................... 18

      C.     Jencks Act Material ............................................................................................. 19

      D.     Expert Notice ....................................................................................................... 20

      E.     *Brady* Material .................................................................................................. 20

CONCLUSION ............................................................................................................................... 21

CASES

*United States v. Agnello*,
   367 F. Supp. 444 (E.D.N.Y. 1973) ...................................................................4

*United States v. Bari*,
   750 F.2d 1169 (2d Cir. 1984)........................................................................2

*United States v. Bertolotti*,
   529 F.2d 149 (2d Cir. 1975)........................................................................11

*United States v. Bin Laden*,
   92 F. Supp. 2d 225 (S.D.N.Y. 2000).............................................................17

*United States v. Bodmer*,
   342 F. Supp. 176 (S.D.N.Y. 2004).................................................................9

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987)........................................................................17

*United States v. Burke*,
   789 F. Supp. 2d 395 (E.D.N.Y. 2011) ...........................................................8

*United States v. Butler*,
   494 F.2d 1246 (10th Cir. 1974) ..............................................................15, 16

*United States v. Calvente*,
   No. 12-CR-732(WHP),
   2013 WL 4038952 (S.D.N.Y. July 26, 2013) ................................................19

*United States v. Casamento*,
   887 F.3d 1141 (2d Cir. 1989)............................................................... passim

*United States v. Castro*,
   829 F.2d 1038 (11th Cir. 1987) ...................................................................11

*United States v. Catapano*,
   No. CR-05-229(SJ),
   2008 WL 2222013 (E.D.N.Y. May 22, 2008) ...............................................11

*United States v. Chung*,
   659 F.3d 815 (9th Cir. 2011) ........................................................................7

*United States v. Copeland*,
   336 F. Supp. 2d 223 (E.D.N.Y. 2004) .........................................................13

*United States v. Coppa*,
   267 F.3d 132 (2d Cir. 2001)........................................................................19

*United States v. Crosby*,
  No. 08-CR-186A,
  2013 WL 3354422 (W.D.N.Y. July 3, 2013) ................................................................. 19

*United States v. Cruz*,
  993 F.2d 164 (8th Cir. 1993) ...................................................................................... 9

*United States v. Davidoff*,
  845 F.2d 1151 (2d Cir. 1988) .................................................................................... 17

*United States. v. Delatorre*,
  522 F. Supp. 2d 1034 (N.D. Ill. 2007) ...................................................................... 3

*United States v. Donaway*,
  447 F.2d 940 (9th Cir. 1971) ............................................................................... 15, 16

*United States v. Dowtin*,
  No. 10 CR 657,
  2012 WL 7679552 (E.D.N.Y. Nov. 20, 2012) ............................................................ 3

*United States v. Duran*,
  596 F.3d 1283 (10th Cir. 2010) .................................................................................. 7

*United States v. Friedman*,
  854 F.2d 535 (2d Cir. 1988) .................................................................................. 2, 8

*United States v. Gleason*,
  265 F. Supp. 880 (S.D.N.Y. 1967) ........................................................................... 19

*United States v. Kahn*,
  381 F.2d 824 (7th Cir. 1967),
  *cert denied*, 389 U.S. 1015 (1967) ........................................................................... 11

*United States v. Latchin*,
  554 F.3d 709 (7th Cir. 2009) ...................................................................................... 7

*United States v. Locascio*,
  357 F. Supp. 2d 536 (E.D.N.Y. 2004) .............................................................. passim

*United States v. Mango*,
  No. 96-CR-327,
  1997 WL 222367 (N.D.N.Y. May 1, 1997) ............................................................... 17

*United States v. Megale*,
  363 F. Supp. 2d 359 (D. Conn. 2005) ........................................................................ 4

*United States v. Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000) ........................................................................ 17

*United States v. Nicely*,
  922 F.2d 850 (D.C. Cir. 1991) .................................................................................. 11

*United States v. Percevault*,
   490 F.2d 126 (2d Cir. 1974)................................................................19

*United States v. Reynolds*,
   No. 10-CR-32A,
   2012 WL 5305183 (W.D.N.Y. Oct. 25, 2012) ....................................19, 20, 21

*United States v. Ruiz*,
   702 F. Supp. 1066 (S.D.N.Y. 1989).....................................................19

*United States v. Salameh*,
   152 F.3d 88 (2d Cir. 1998)................................................................13

*United States v. Savin*,
   No. 00 CR. 45 (RWS),
   2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ........................................18

*United States v. Tarango*,
   396 F.3d 666 (5th Cir. 2005) .......................................................15, 16

*United States v. Walker*,
   142 F.3d 103 (2d Cir. 1998)..............................................................1, 2

*United States v. Winter*,
   663 F.2d 1120 (2d Cir. 1981).............................................................16

*Zafiro v. United States*,
   506 U.S. 534 (1993)...................................................................1, 8, 13

## STATUTES

28 C.F.R. § 73.1(a).....................................................................................7

18 U.S.C. § 1956(h)...................................................................................9

18 U.S.C. § 951..........................................................................................7

## RULES

Fed. R. Crim. P. 7(d)...............................................................................21

Fed. R. Crim. P. 7(f) ..........................................................................17, 21

Fed. R. Crim. P. 14 ....................................................................1, 2, 12, 21

Fed. R. Evid. 404(b)........................................................................18, 21

# INTRODUCTION

For the reasons outlined in the Clerk Defendants Memorandum in Support and as discussed further below, each of the arguments offered by the government in opposition to severance fails and the Clerk Defendants' motion for separate trials should be granted. In addition, the government's claim that a bill of particulars is not warranted because "the defendants have been provided with more than enough information to allow them to prepare their defenses and to avoid unfair surprise" should similarly be rejected, and their limited request for a bill of particulars should be granted. Finally, the deadlines for the production of various categories of discovery materials that the government proposes in its Opposition are largely inadequate, and thus the Clerk Defendants renew their request that the government be compelled to produce such materials pursuant to the schedule set forth in their Memorandum in Support.[1]

# ARGUMENT

## I. THE SUBSTANTIAL RISK OF PREJUDICE AND JUDICIAL EFFICIENCY WEIGH STRONGLY IN FAVOR OF SEVERANCE PURSUANT TO RULE 14

This Court has broad discretion to grant severance "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14. A key consideration is whether evidence admissible only against one defendant might improperly "spillover" to the jury's consideration of the other defendants' guilt. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Where the risk of prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials[,]" severance is appropriate. *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998).[2]

---

[1] The Clerk Defendants fully addressed the substantive merits of their request that this Court strike prejudicial surplusage from the Indictment in their previously filed Memorandum in Support, and will not elaborate further on such arguments here. However, the Clerk Defendants respectfully renew each of their positions relating to striking of prejudicial surplusage previously asserted. In addition, in the event that this Court does not intend to read or provide a copy of the Indictment to the jury, such decision would obviate any need to strike surplusage here.

[2] Although the government alleges that "[d]efendant Shavkat Abdullaev opposes Diatlova, Taghiyeva and Zagon's motion for severance[,]" Opp'n at 1, this statement is plainly incorrect. In reality, Abdullaev merely argues that "if the Court grants their application for a severance, [he] should be grouped together with the trial of the Clerk Defendants." ECF No. 225 at 1-2. Although the Clerk Defendants expect that they will present as part of their defense that they were told by Abdullaev in his capacity as Shipping Manager that their conduct was fully compliant with export control laws, and also that he had the ultimate authority and responsibility for ensuring all shipments

As an initial matter, the government's position that severance should only be granted if its denial would amount to a "miscarriage of justice" is plainly wrong. Opp'n at 6 (citing *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988).[3] That is simply the *standard of review on appeal* from a discretionary decision of a district court, and a test which presumes that the trial has already occurred; it is not the relevant analysis at this stage. Instead, the Court can, and should, sever the Clerk Defendants if it determines, in the exercise of that discretion, that the likelihood of prejudice outweighs the efficiencies of a joint trial. *Walker*, 142 F.3d at 110. To be sure, "district judges must retain a considerable degree of discretion in determining whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants." *United States v. Casamento*, 887 F.3d 1141, 1151 (2d Cir. 1989).

Critically, the Clerk Defendants are not charged with acting as unregistered agents of the Russian government. But defendant Alexander Fishenko is. *See* Indictment ¶¶ 27-28; Gov't Letter, ECF No. 3 at 1 ("Fishenko acted as an agent of the Russian government by illegally procuring sophisticated microelectronics for Russian government agencies, including military and intelligence agencies . . ."). The Clerk Defendants are not charged with conspiring to launder money. But defendants Fishenko and ARC are. *See* Indictment ¶¶ 36-37. The Clerk Defendants are not charged with obstruction of justice. But defendants Fishenko and Posobilov are. *See id.* ¶¶ 38-39; ECF No. 3 at 4 ("Fishenko [and] Posobilov [] began an extensive effort to falsify documents and other items relating to the transactions . . ."); Gov't Mem. Opp'n, ECF No. 117, at 3 ("...Fishenko and his codefendant[] and subordinate[] Posobilov ... obstructed an anticipated DOC inquiry by falsifying documents and deleting records..."). The Clerk Defendants are not alleged to have had close relationships with Russian military and intelligence officials.

---

were in compliance with such laws, the Clerk Defendants do not object to Abdullaev being grouped with them rather than with the Management Defendants in the event that this Court should grant their motion for a separate trial.

[3] In *Friedman*, the Second Circuit recognized that to show that a district court had abused its discretion in denying a motion to sever under Rule 14, an appellant "must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'" 854 F.2d at 563 (citing *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984) ("A motion to sever under Fed. R. Crim. P. 14 is for the trial court's discretion, and a denial 'will be reversed only upon the appellant's successfully assuming the heavy burden of showing that he suffered substantial prejudice due to the joint trial,' amounting to a miscarriage of justice.") (internal citations omitted)).

But Fishenko and Posobilov are. *See* ECF No. 3 at 6, 8 (alleging that Fishenko claimed "that he served in a Soviet military intelligence unit in Berlin in the 1980s" and that he "has maintained significant and continuing ties with Russia" and "has referenced his ties to Russia's intelligence services"); *id.* at 8 (alleging that Posobilov has "substantial ties to Russia"). The Clerk Defendants are not alleged to have directed or devised any of the alleged illegal acts underlying the conspiracy charged in Count Two or to have exercised managerial or decision-making authority at ARC. But Fishenko and Posobilov are. *See id.* ("As the procurement manager of Arc, Posobilov had day-to-day supervisory control over Arc's illicit business activities."); ECF No. 117 at 3 ("Throughout the conspiracy, Fishenko directed the illicit activities of his employees.").

In arguing that severance is not warranted, the government alleges that "an analysis of [the applicable factors] demonstrates that severance is inappropriate." Opp'n at 8.[4] However, the government's arguments with respect to each factor are rife with legal inaccuracies, mischaracterizations of precedent, highly-suspect, unsupported and unsupportable allegations, and erroneous assertions of fact. The government's most glaring errors – which constitute only a fraction of its misrepresentations – are discussed below.

## A. Number of Defendants and Counts in the Indictment

*First*, while the Second Circuit may have "never recognized the need for severance based on the size of the trial alone," Opp'n at 6, district courts *have often* granted severance where the number of defendants and counts, *taken into consideration with other factors*, showed that those seeking a severance would likely not have obtained a fair trial if tried jointly. *See United States. v. Delatorre*, 522 F. Supp. 2d 1034 (N.D. Ill. 2007) (severance of 14-defendant RICO conspiracy prosecution warranted on grounds of prejudice and workability; "mega-trial" might last longer than five months given complex facts including

---

[4] These factors include: (1) "the number of defendants and counts in the indictment;" (2) "the complexity of the indictment;" (3) "the estimated length of the trial;" (4) "disparities in the amount or type of proof offered against the defendants;" (5) "defendants with markedly different levels of culpability in the overall scheme;" (6) "conflicts between defense theories or strategies;" and (7) "potential prejudice from evidence admitted against co-defendants that is inadmissible or excluded as to a particular defendant." *United States v. Dowtin*, No. 10 CR 657, 2012 WL 7679552, at *4-6 (E.D.N.Y. Nov. 20, 2012) (Levy, Mag. J.).

multiple alleged conspiracies with different defendants; severance would reduce length of service for each jury by streamlining and focusing presentation of evidence; smaller number of attorneys achieved through severance would reduce amount of argument and cross-examination); *United States v. Locascio*, 357 F. Supp. 2d 536, 545 (E.D.N.Y. 2004) (granting separate trial for three of eleven defendants "[i]n light of the serious prejudice likely to result from a joint trial, the duration and complexity of the trial, and the large number of defendants and counsel which are involved").

For example, in *United States v. Agnello*, 367 F. Supp. 444 (E.D.N.Y. 1973), a prosecution for conspiracy to embezzle foreign shipments of freight and to unlawfully remove merchandise from customs, the indictment consisted of "fourteen counts charging twenty-three defendants and encompassing a period of over eight years." *Id.* at 447. In granting severance, the court observed that "because of the complexity of the charges and the number of defendants involved, grave problems may be anticipated." *Id.* "While this alone is not controlling," the court wrote, "it cannot be questioned that during the trial a large portion of the evidence received will not apply to these defendants." *Id.* ("[W]here the evidence to be received at trial is to be voluminous and where a jury is required to make its determination on the basis of inferences to be drawn from circumstantial evidence, substantial prejudice may arise in that the jury may not be able to decipher the facts, thus becoming confused and unable to judge each defendant on the merits of his own case."). Thus, "based upon the complexity of the charges, the anticipated duration of the proceedings, the number of defendants, and the fact that several of the defendants are named solely in the conspiracy count," the court severed eight defendants. *Id.*

In arguing against severance, the government relies on *United States v. Megale*, 363 F. Supp. 2d 359, 368-69 (D. Conn. 2005), in which it claims the court "den[ied] a severance motion in [an] eight-defendant trial that was predicted to last more than six weeks." Opp'n at 7-9. *Megale*, however, involved only a motion to sever one of forty-six *counts* in the indictment, not a motion to sever particular *defendants* for separate trial, as the Clerk Defendants seek here. *Megale*, 363 F. Supp. 2d at 368-69. The decision is therefore inapposite.

## B.    Complexity of the Indictment

***Second***, the government's claims that the charges are only "somewhat complex" and that "the transactions themselves are not particularly complicated" are absurd. Opp'n at 9. This case is extraordinarily complex, with allegations spanning a nearly four-year period and implicating dozens of individuals and companies and involving thousands of export transactions of microelectronic electronic products and parts – all in the context of highly sophisticated, detailed and dense export laws and regulations. A significant portion of the document-intensive evidence is in Russian over which there will likely be significant debate over correct translation. This is not a run-of-the-mill export law violation prosecution. Rather, the government previously claimed that this case involves "an elaborate web of lies to evade the laws that protect our national security," *see* Press Release, FBI, Houston Div., *Russian Agent & 10 Other Members of Procurement Network for Russian Military & Intelligence Operating in the U.S. & Russia Indicted in New York* (Oct. 3, 2012) (available at [http://tinyurl.com/9vqerm4](http://tinyurl.com/9vqerm4)), that "involves conduct that directly impacts the national security of the United States," *see* ECF No. 3 at 5, and "[a] pattern of blatant fraud [that] continued for years and allowed Fishenko to continue to dupe U.S. suppliers into selling controlled parts to ARC," *see* Gov't Mem., No. 13-3020 (2d Cir. Aug. 26, 2013), ECF No. 21 at 11. Further, the government's assertion that an "admonition to the jury to consider each defendant's guilt separately" and the Court's "ability to give appropriate limiting instructions" would be a sufficient remedy here, *see* Opp'n at 7, 14, ignores the real and serious risk of jury confusion created by trying the Clerk and Management Defendants jointly. Respectfully, if an admonition effectively warning the jury not to get confused were sufficient to avoid the risk posed by the complexities of this case, then it will be sufficient in all cases, and this factor has no meaning at all.

## C.    Estimated Length of Trial

***Third***, the government states that "its direct case in a joint trial would last roughly two to three weeks," including cross-examination, and that "[a] separate trial involving just Diatlova, Taghiyeva and Zagon would not be significantly shorter." Opp'n at 9-10. In reality, however, its estimates are highly suspect and defy common sense, given the complexity of the export laws and regulations involved, the

vast number of transactions and parties at issue, the government's production (and continued production) of thousands of telephone conversations secretly recorded pursuant to a FISA warrant and hundreds-of-thousands of pages of documents, including e-mail communications, from which exhibits will be culled (which are mostly in Russian and a significant portion of which is classified pursuant to FISA), and the likelihood that dozens of witnesses will be called to testify to activities that occurred over nearly a four-year period. Presenting such evidence will be a lengthy, drawn-out process. Further, in a joint trial, seven attorneys will each offer openings and summations and may choose to cross-examine each government witness. Indeed, if all seven defendants are forced to proceed to trial together, the trial is likely to devolve into an unwieldy and incredibly time-consuming marathon that will present an unnecessary burden on the jury. *Casamento*, 887 F.2d at 1151-52, instructs trial courts faced with multiple defendant and complex trials to obtain from the government a "good faith estimate" of the time it will take to present the government's case. We do not believe the government has provided that here, nor has it supplied an estimate of witnesses or of the number of government exhibits.

Simply put, experience and common sense dictate that the government's direct case in a joint trial will take far longer than the "two to three weeks" that it estimates.[5] However, as the Second Circuit has recognized, this Court "need not accept the [government's] estimate . . . of the time reasonably anticipated to present the government's case . . . without question but should be free to make an independent assessment based on various factors including the number of defendants, the time and territorial scope of the crimes charged, the number of witnesses likely to be called, and the number and size of exhibits likely to be introduced, including wiretaps." *Id.*; *see also Locascio*, 357 F. Supp. 2d at 545 ("A judge is not required to accept the government's estimate of the time required to present its case without question, but is free to make an independent assessment[.]") (citing *Casamento*, 887 F.2d at 1152). Should the court perform such an assessment here, the government's estimation will almost certainly be exposed as laughable.

---

[5] Of course the government's estimate does not include the amount of time needed for each of the seven defendants to present his or her evidence should he or she choose to do so -- and the Clerk defendants (and likely all defendants) are each planning to present a robust defense at this point.

Relatedly, although it may be true that, in a separate trial of the Clerk Defendants, "[t]he government would still have to establish the nature, function and objects" of the conspiracy charged in Count Two, *see* Opp'n at 10, it either ignores or greatly minimizes the extensive amount of time that would be saved by omitting the need to present evidence regarding the counts in which the Clerk Defendants are not charged.  For example, to establish that Fishenko acted as an unregistered "agent of a foreign government" in violation of 18 U.S.C. § 951, the government must show not only that he "'agree[d] to operate within the United States subject to the direction or control'" of the Russian government, without registering as a foreign agent, but also that he took actual overt "***action[s]*** . . . at the direction of or under the control of a foreign government."  *United States v. Duran*, 596 F.3d 1283, 1291 (10th Cir. 2010) (emphasis added); *see also United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) ("[T]he statute requires more than mere status as a foreign agent; it requires *acts* as an agent on behalf of a foreign country.") (emphasis in original); *United States v. Chung*, 659 F.3d 815, 823 (9th Cir. 2011) ("The government [] must prove that . . . Defendant acted pursuant to an agreement to operate subject to the direction or control of [a foreign government].  Thus, in addition to proving *Defendant's* intent, the government must also establish that a [foreign] official directed or controlled Defendant's actions during the limitations period.") (emphasis in original); 18 U.S.C. § 951(a) (criminalizing "acts" of "an agent of a foreign government without prior notification to the Attorney General"); 18 U.S.C. § 951(d) (defining "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official"); 28 C.F.R. § 73.1(a) (defining "agent" as "all individuals acting as representatives of, or on behalf of, a foreign government or official, who are subject to the direction and control of that foreign government or official").  Here, the government must present evidence that a foreign official "directed or controlled" Fishenko to make out this charge – evidence that would most certainly be highly inflammatory and prejudicial to the Clerk Defendants and would not be admissible against them in a separate trial.

The government also summarily dismisses as a "hollow promise" the Clerk Defendants' willingness to "stipulate to many of the facts that the government would need to prove against the

corporate and Management Defendants," reasoning that "[u]nless the moving defendants are prepared to stipulate to the objects of the conspiracy, it is difficult to fathom how a separate trial for the moving defendants would be streamlined." Opp'n at 10. However, the government's position ignores the fact that stipulating to many of the facts that the government would have to prove with respect to the sixteen counts in which the Clerk Defendants are not charged would clearly shorten and streamline the proceedings in a separate trial of the Clerk Defendants as well. In complex multi-defendant cases, courts "should give particular attention to the feasibility of conducting separate trials for any one or more defendants as to whom a separate trial would be relatively brief, especially if such defendants are willing to stipulate, for purposes of a separate trial, to facts concerning the activities of other defendants who remain to be tried in the main trial." *Casamento*, 887 F.3d at 1152. The Clerk Defendants are willing to do so here.

### D. Disparities in Amount or Type of Proof Offered Against Defendants

*Fourth*, the government argues that "[n]either the charges nor the evidence against Fishenko nor [] Posobilov is sufficiently dissimilar or prejudicial to the remaining defendants to justify separate trials[,]" and that "separate trials would largely result in the presentation of the same testimony and documents twice." Opp'n at 2. However, the Clerk Defendants have demonstrated that the Indictment's counts charging only corporate and/or Management Defendants with acting as an unregistered agent of the Russian government (Count 1), money laundering conspiracy (Count 24), and obstruction of justice (Count 25) are far different in theory and require different evidence than the other charges. Thus, in this case, the prejudice of a joint trial is so substantial as to amount to a miscarriage of justice. *See Friedman,* 854 F.2d at 563; *United States v. Burke*, 789 F. Supp. 2d 395, 398-99 (E.D.N.Y. 2011) (Johnson, J.) (citing *Zafiro*, 506 U.S. at 539); *Zafiro*, 506 U.S. at 539 ("[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.").

For example, the government argues that Count 24, the money laundering conspiracy charge involving Fishenko and ARC, is "inextricably linked" to the "export scheme" alleged in Count 2 and that

the improper conduct which Count 24 targets "is not conceptually distinct from the underlying conspiracy with which all defendants are charged." Opp'n at 10. The government is wrong. "The language of the [money laundering statute upon which Count 24 is based, 18 U.S.C. § 1956(h)] clearly penalizes the *transportation of monetary instruments in promotion* of unlawful activity, not the underlying unlawful activity." *United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) (emphasis in original). Indeed, "[t]he elements of a money laundering offense do not include, or even implicate, the capacity to commit the underlying unlawful activity[,]" *i.e.*, the "export scheme" here. *Id.* (citing *United States v. Cruz*, 993 F.2d 164, 167 (8th Cir. 1993) ("For the government to prove a violation of section 1956(a)(1)(A)(i), the evidence must establish (1) that the defendant conducted a financial transaction which involved the proceeds of unlawful activity; (2) that he knew that the property involved in the transaction was proceeds of some form of specified unlawful activity; and (3) that he intended to promote the . . . unlawful activity." (quotation marks and alterations omitted)). Thus, "[w]hether [Fishenko] violated the [IEEPA] . . . is irrelevant to proving that he transported money in furtherance of [IEEPA] violations." *Id.* Similarly, evidence demonstrating that Fishenko conducted (or conspired to conduct) one or more transactions to send money to Russia, which the government must present to prove the money laundering conspiracy charge against him, is entirely irrelevant to the Defendants' guilt in relation to the "export scheme" conspiracy charged in Count 2 and would be inadmissible as evidence against the Clerk Defendants in a separate trial.

The government further claims that nothing about its prosecution of Fishenko for acting as an unregistered agent of the Russian government, or its prosecution of Fishenko and Posobilov for conspiring to launder money or obstruction, is so "inflammatory" or "prejudicial" so as to warrant severance. Opp'n at 10. This statement is disingenuous in light of the government's professed strategy for prosecuting this case and prior statements concerning it. The government has repeatedly stated that "the offenses charged in the indictment involve conduct that directly impacts the national security of the United States." *See, e.g.*, ECF No. 3, at 5. It has made no secret that it intends to paint Fishenko and Posobilov as a cabal of dangerous foreign agents with "ties to Russia's intelligence

services," *id.* at 8, who "have demonstrated their willingness and ability to impede the judicial process," *id.* at 6, and who "went to great lengths to conceal their procurement activities for the Russian military." FBI Press Release. However, there is no evidence that the Clerk Defendant's knew or even suspected that Fishenko was an agent of the Russian government, that he and Posobilov had ties to the Russian military and/or intelligence services, or that they were procuring restricted electronics for the Russian military. As set forth above, none of this prejudicial information about their superiors would be relevant or admissible at a separate trial. In this environment, it is hard to believe that the government can find nothing prejudicial about trying the Clerk Defendants alongside defendants whom it accuses of acting as an unregistered agent of the Russian government (which is immediately understood by most Americans as an enemy and dangerous threat to the United States), obstructing justice, and money laundering conspiracy. Indeed, in light of recent high-profile instances of hostilities with Russia that have dominated the news in recent months, suggestions that defendants are involved with or even acted as agents operating at the direction of Russian military or intelligence entities could not be more prejudicial to defendants and would serve no purpose other than to link the case in the jury's mind to this anti-Russian sentiment.

The government's argument that "[r]elief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater" Opp'n at 13, misses the point. The spillover prejudice at issue here stems not only from the severity of the alleged offenses, but also from the fact that the charges alleged solely against the corporate and/or Management Defendants, considered in tandem with the complexity of this case, create a heightened risk of guilt by association. The jury here will be confronted with what has been dubbed a "surreptitious and systematic conspiracy" (FBI Press Release) involving a protracted trial with complex evidence, in which issues of *mens rea* and knowledge of wrongdoing will predominate. Thus, throwing in separate charges of obstruction of justice, money laundering conspiracy, IEEPA violations, and acting as an unregistered agent of the Russian government brought solely against the corporate and/or Management Defendants substantially increases the already present risk of juror confusion and, more troubling, guilt by association. The signal this sends the jury is unmistakable: if they have any doubt as

to whether the Clerk Defendants intended to violate U.S. export laws and regulations, they need look no further than the highly inflammatory allegations of obstruction and close connections to Russian intelligence, military and government bodies asserted against the Management Defendants. This is highly prejudicial and warrants severance.[6]

Further the government argues that Magistrate Judge Gold's Report in *United States v. Catapano* where he "concluded that a defendant's motion to sever should be granted where the indictment charged two separate but related conspiracies, one of which involved only the moving defendant" is inapposite. Opp'n at 11 n. 5 (citing *United States v. Catapano*, No. CR-05-229(SJ), 2008 WL 2222013, at *17 (E.D.N.Y. May 22, 2008)). But the *Catapano* decision clearly supports the Clerk Defendants' position, for contrary to the government's claim that "[h]ere, the indictment charges a single conspiracy involving all of the defendants," the Indictment here, as in *Catapano*, charges "two separate but related conspiracies" – , conspiracy to violate the IEEPA and the AECA and to Commit Wire Fraud in Count 2 and conspiracy to commit money laundering in Count 24 – "one of which [the money laundering conspiracy] involved" only the corporate and Management Defendants but not the Clerk Defendants. Thus, the government's efforts to distinguish *Catapano* are without merit.

### E. Defendants with Markedly Different Levels of Culpability in the Overall Scheme

*Fifth*, in arguing that "the defendants' varying roles in the scheme do not warrant severance," the government asserts that the Clerk Defendants "incorrectly contend that the other defendants are charged with 'far more serious crimes.'" Opp'n at 11. In so arguing, however, the government conspicuously fails to acknowledge the counts for obstruction of justice, money laundering conspiracy, and acting as an

---

[6] *See United States v. Bertolotti*, 529 F.2d 149, 157 (2d Cir. 1975) (defendants suffered incurable prejudice where "[u]nder the guise of its single conspiracy theory, the government subject each of the seven appellants to voluminous testimony relating to unconnected crimes in which he took no part"); *United States v. Castro*, 829 F.2d 1038, 1046 (11th Cir. 1987) (finding incurable spillover prejudice where defendant was subjected "to extensive evidence—several months' worth—relating to crimes in which [defendant] took no part and of which he had no knowledge"); *see also United States v. Nicely*, 922 F.2d 850, 855 (D.C. Cir. 1991) ("motions for severance are particularly sensitive in conspiracy cases because of the danger that the guilt of one defendant may be unjustly transferred to another") (internal citation and quotation marks omitted); *United States v. Kahn*, 381 F.2d 824, 839 (7th Cir. 1967) (noting heightened risk of juror confusion and "unwarranted imputations of guilt" attendant with large conspiracy trials involving multiple defendants), *cert denied*, 389 U.S. 1015 (1967).

unregistered agent of the Russian government in which the Clerk Defendants are not charged, and fails to offer any explanation as to why these charges – which carry maximum sentences of 20, 20, and 10 years, respectively – are not "more serious crimes" than the conspiracy count in which all defendants are charged, which provides for a maximum sentence of only five years imprisonment. ECF No. 3 at 5-6. While the government also claims that "each of the defendants played key roles in the same conspiracy," neither in the Indictment nor in its Opposition does it identify what these "key roles" were. To the contrary, the government's own allegations make clear that the scheme was developed, directed and executed by Fishenko and the Management Defendants through the use of the corporate entity defendants, whereas the Clerk Defendants are alleged to have played only minimal, supporting roles. *United States v. James* is on point, where this Court granted two defendants' motions for a separate trial, finding "that severance [was] appropriate for a number of reasons including the discrepancy in the severity of the sentences and in the length of trials for the various Defendants." No. 02-CR-0778(SJ), ECF No. 177 (E.D.N.Y. Oct. 21, 2005).

Finally, the government's statement that "[t]he Second Circuit has made clear that a defendant's purportedly minor role, or variation in the quantities of evidence against defendants, are not grounds for severance" is incomplete and misleading, omitting the critical qualifier that these factors are only "insufficient grounds for separate trials" when they are "standing alone." Opp'n at 6. To be sure, a defendant's minor role or variation in the quantities of evidence against defendants are inarguably grounds for severance where other factors favoring separate trials are also found to be present. Indeed, as the Second Circuit has recognized, "[i]t makes little sense to extend the time of a multi-month trial by including a peripheral defendant against whom a few days of evidence in a separate trial would be sufficient to obtain conviction on scaled down charges exposing him to approximately as much punishment as he would likely have received on the original charges." *Casamento*, 887 F.2d at 1152.

Thus, in *Locascio*, three defendants moved for severance under Rule 14, arguing that "because they are the only individual defendants charged neither with RICO nor money laundering, a joint trial

would be highly prejudicial to their right to a fair trial and would prevent the jury from reaching a fair verdict." 357 F. Supp. 2d at 543-44. In granting their motion, the court held that:

> [t]he equities here weigh in favor of not subjecting these defendants to a trial with eight additional defendants in which much of the most prejudicial evidence does not pertain to them. This is true even if the government does not present evidence of murder or other violent activities; the mere association with a Mafia family is, in itself, highly prejudicial. Where the majority of defendants are alleged to have been either members of the Family or associated therewith, it would be very difficult for a jury to avoid carrying over these highly prejudicial allegations to those defendants who are neither charged with RICO activities, nor alleged to be affiliated with the Mafia.

*Id.* at 544-45.

## F. Antagonistic Defenses

**Sixth**, in arguing that the defendants' antagonistic defenses do not support severance, the government cites cases finding that "an adversarial stance by a co-defendant clearly does not, alone, require trials to be severed," and that "the possibility that codefendants may mount mutually antagonistic defenses is not itself a ground for severance where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions." Opp'n at 7, 11-12. Such selective citations, however, seem to be offered to draw this Court's attention away from the fact that, while "[m]utually antagonistic defenses are not prejudicial *per se*[,]" *Zafiro*, 506 U.S. at 538, the Second Circuit has repeatedly recognized that "'mutually antagonistic or irreconcilable defenses may be so prejudicial *in some circumstances* as to mandate severance.'" *United States v. Copeland*, 336 F. Supp. 2d 223, 224 (E.D.N.Y. 2004) (quoting *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (emphasis in original). One such case may be where, "'in effect, a defendant's counsel becomes a second prosecutor . . . .'" *Id.* (citations omitted) (ordering severance of defendants based on mutually antagonistic defenses). We expect that may very well become the case here.

## G. Prejudicial Spillover

**Seventh**, the government also attempts to downplay the risk of prejudice to the Clerk Defendants posed by a joint trial by focusing on the single joint conspiracy count (Count 2) at the expense of the other, at most tangentially related substantive counts (including acting as an agent of a foreign government (Count 1) and obstruction of justice (Count 25)) and separate money laundering conspiracy

(Count 24) charged in the Indictment. It claims that because the illicit acts charged in Counts One and Twenty-Five and the separate conspiracy charged in Count Twenty-Four against only corporate and/or Management Defendants are not "conceptually distinct" from the conspiracy charged in Count Two, and since these charges are "largely supported" by some of the same evidence as the allegations asserted against all defendants, the danger of spillover is minimized. Opp'n at 3-4, 10. In so arguing, however, the government ignores the fact that there is a vast amount of evidence that is relevant only to the charges against the corporate and Management Defendants and not the Clerk Defendants, including, for example, (1) evidence that Fishenko acted "under the direction or control" of the Russian government, as required to prove the charge levied solely against him in Count One, *see* Argument Section I.C., *supra*; (2) that Fishenko, Posobilov, and others destroyed and altered documents in August and September 2011 to impede a Department of Commerce investigation pertaining to "two shipments of controlled transistors to Apex," which likely occurred before the Clerk Defendants even began working at ARC, as required to prove the obstruction of justice count charged against Fishenko and Posobilov in Count Twenty-Five. Should a jury hear that Fishenko operated as a Russian spy, and further hear that Fishenko and the Management Defendants subverted United States intelligence efforts by destroying or hiding evidence of that international espionage, the jury would be indelibly inflamed and tainted towards convicting everyone connected to that enterprise—regardless of their culpable mental state or knowledge of Fishenko's actions. This is especially true in this city, which suffered so greatly from international terrorism twelve years ago—an event that lingers daily on every New Yorker's mind.

Moreover, the government's argument that a limiting instruction would suffice to cure any risk of prejudice is not compelling. The argument that this Court can give a limiting instruction at any time and for any valid legal reason cannot be a cure-all for every circumstance. Situations exist where the prejudice arising from admitting evidence—perhaps admissible and necessary against one defendant yet inadmissible or unnecessary against another—demands severance rather than trust in a simple limiting instruction. The spillover prejudice that the Clerk Defendants would suffer having to sit through a joint trial recounting a multitude of IEEPA violations, obstruction of justice and acting as an agent of a foreign

government offenses, as well as an entirely independent conspiracy to launder money is great and would ultimately undermine confidence in a guilty verdict, should a jury return one in a joint trial.

The Fifth Circuit's decision in *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005), is instructive. There, the government charged two individuals with healthcare fraud. One defendant (who failed to appear at trial) was clearly the orchestrator of the fraud, and the vast bulk of the government's case-in-chief demonstrated this. *Id.* at 674. The government's evidence against the second defendant (who did appear at trial) was "demonstrably less," as "there was scant testimony that Tarango did anything improper other than draft the relevant HCFA claim forms as she was instructed to do by [the other defendant]." *Id.* at 675. Examining the relevant factors, the Fifth Circuit affirmed the trial court's decision to grant Ms. Tarango a new trial:

> [G]iven that there were approximately 50 witnesses who testified at trial-the disproportionate number of whom testified as to a missing co-defendant, that there was scant testimony that Tarango did anything improper other than draft the relevant HCFA claim forms as she was instructed to do by Patel, because the jury was permitted to hear a significant amount of inadmissible evidence (as it pertained to Tarango), and due to the degree of notoriety attending to Patel's absence, we find that the cumulative effect of these factors when viewed in their totality, strongly weigh against overturning the district court's determination.

*Id.* Similarly, in *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971), the Ninth Circuit reversed defendant's conviction, finding that the trial court had abused its discretion by failing to sever the defendant where the vast majority of the government's case-in-chief involved other defendants. *Id.* at 943. Specifically, only fifty out of 2,300 pages of the transcript comprising the government's case-in-chief related to the defendant. *Id.* Thus, the court found "it impossible to conclude on the facts here that appellant was not severely prejudiced by the evidence relevant only to the co-defendants . . . [d]espite the trial judge's sincere effort to keep the jury aware of the limitations in the admissibility of evidence[.]" *Id.; see also United States v. Butler*, 494 F.2d 1246, 1256-58 (10th Cir. 1974) (where government "attempted to merge what, if anything, should be at least three separate, distinct conspiracies into one" and "[d]ifferent combinations of [the twenty-three charged] defendants were involved in nearly every transaction which figured in the trial," defendant charged in only one conspiracy count was entitled to have proceeding against him severed, as "[t]he possibility that the issue of his guilt was confused with the

guilt of other defendants involved in unrelated transactions at different times and in different places [was] too great"). Here, as in *Donaway*, *Tarango*, and *Butler*, the disparity in the evidence against the Clerk Defendants versus the corporate and Management Defendants is so great that severance is justified. . The great bulk of the government's case-in-chief will be against the corporate and Management Defendants, and necessarily so, since they alone are alleged to have roles in "devising" and "directing" the conspiracy whereas the Clerk Defendants were, at most, only marginally involved in its alleged "execution" and played absolutely no role in much of the charged conduct. *See United States v. Winter*, 663 F.2d 1120, 1139 (2d Cir. 1981) (finding misjoinder where defendant was involved in fixing only one out of twenty races alleged in conspiracy charge). Thus, a serious risk exists that a joint trial of all defendants will compromise the Clerk Defendants' ability to put forth individual defenses and will prevent the jury from making a reliable judgment about their innocence.

H.       **Judicial Economy**

Finally, the government exaggerates the "inefficiencies" of separate trials, claiming that "[s]eparate trials would literally result in the Court hearing the same evidence twice," that "almost all of the evidence would be duplicative," and that "nearly every witness who would testify in a joint trial would also testify in a separate trial involving [only the Clerk] defendants." Opp'n at 9-10, 14. While some evidence would naturally overlap between the two trials, each trial would necessarily be substantially shorter than a single mega-trial. Many of the counts charged in the Indictment would be irrelevant in the Clerk Defendants' trial and, consequently, so would the evidence needed to support them. Opening statements, cross examinations, and summations would be cleaved and spread through two distinct trials rather than one mega-trial. Neither the Court nor the jury(ies) would be forced to endure the unwieldy and exhausting specter of seven separate defendants and their counsel. Moreover, the defense cases are, of course, unique to each defendant and would not be replicated at each trial.

II.     **DEFENDANTS' REQUEST FOR A LIMITED BILL OF PARTICULARS SHOULD BE GRANTED**

The government argues that a bill of particulars is unnecessary in this case because (1) the indictment provides defendants with sufficient information and (2) it has "provided discovery materials in

a well-organized fashion" and "produced the vast majority of documents in electronically searchable formats." Opp'n at 20. Both of these arguments fail.

*First*, although the indictment in this case provides a more detailed description of the overall scheme with which defendants are charged than some indictments may, the government states that the list of overt acts identified within it is "non-exhaustive." *Id.* This is precisely why a bill of particulars is necessary in this case. For if the government was to identify for the first time *at trial* acts it alleges were criminal, then the defense would be in a position of complete surprised and would be wholly unprepared to defend the allegations. Indeed, the burden of proof would unconstitutionally shift to the defendant. Federal Rule of Criminal Procedure 7(f) is designed specifically to prevent this situation. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).

Second, in light of the volume of discovery that has been provided, the government's argument that it has identified *some* of the discovery upon which it will rely to prove its case is unavailing. Indeed, the fact is that, apart from the recordings and documents the government has specifically identified, there are hundreds of additional recordings and tens of thousands of additional documents provided in discovery upon which the government *may* rely to prove its case. As set forth in our opening brief, providing "mountains" of material simply fails to satisfy the government's burden. *See Bortnovsky*, 820 F.2d at 574; *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000); *United States v. Mango*, No. 96-CR-327, 1997 WL 222367, at *10 (N.D.N.Y. May 1, 1997); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

These concerns are significantly heightened in this case, since the vast majority of the discovery is classified. Thus, it would take that much more time for the defense to locate materials it needs to defend surprise allegations of misconduct, and defense counsel would then have to take steps necessary to declassify the materials in order to use them at trial. Almost certainly these processes would necessitate a mid-trial continuance for the defense to effectively prepare.

Accordingly, if the government concedes that it will limit its case so as to prove only those overt acts specifically identified in the indictment, we agree that a bill of particulars may not be necessary. If,

however, as we suspect, the government intends to suggest that acts other than those set forth in the indictment were criminal in nature and/or undertaken in furtherance of the charged scheme, then a bill of particulars is required so that the defense is not forced to guess which of the tens of thousands of acts in which they engaged allegedly violated the law and to prepare to defend each and every one of them. *See United States v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001).

### III. THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE THE REQUESTED DISCOVERY

#### A. Rule 404(b) Evidence

Defendants request that this Court direct the government to provide notice **90** days in advance of trial of any evidence that it will seek to admit pursuant to Fed. R. Evid. 404(b). In its Opposition, the government proposes production only **45** days in advance of trial. Given the broad scope of the charges in the instant case, however, 45 days will likely be insufficient to review the evidence and make any *in limine* motions that may be required. In addition, in conspiracy prosecutions, the government routinely seeks to admit evidence that, though not relevant to the specific allegations in the indictment, is offered to prove the existence of the charged conspiracy and its means and methods of operation. This evidence is frequently highly prejudicial and necessitates *in limine* motions. Thus, we respectfully submit that Defendants request for at least **90** days advance notice is most reasonable.

#### B. Exhibit and Witness List

Defendants seek disclosure of the government's exhibit and witness lists **90** days in advance of trial. The government, however, contends that **30** days in advance of trial is sufficient and requests that defendants be required to produce their exhibit and witness lists **14** days before trial. The government's argument further highlights the need for a bill of particulars and the serious problems that may arise without one. Absent the requested particulars, defense counsel will have to rely on the government's witness list and exhibit list to try to decipher what the government intends to prove in its case-in-chief. A very real danger exists that the defense may realize the need to utilize certain items disclosed in discovery only upon seeing the government's exhibit list. Those items may require declassification—a process that will likely exceed the 16-day window the government requests. Moreover, the Court has designated this

case as complex due in part to the lengthy investigation and voluminous discovery that led to it.  A 30/14-day scheduling order is unreasonable in such a case

### C.    Jencks Act Material

In response to Defendants' request that this Court set a schedule for the production of Jencks Act material, the government claimed in its Opposition that, "[c]onsistent with the statutory text, the Second Circuit has repeatedly ruled that a district court may not order the early disclosure of 3500 material." Opp'n at 23 (citing *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001).  In their Memo in Support, the Clerk Defendants also recognized that "the Jencks Act does not require the disclosure of a witness's statements until after that witness has testified at trial[.]"  Mem. Supp. at 45.  However, the government's opposition does not address Defendants' additional argument that "this statutory provision (traditionally honored only in the breach) must yield in favor of" pretrial disclosure where witness statements are required to apprise defendants of facts "essential" to the preparation of a defense.  *See id.*; *see also, e.g.*, *United States v. Calvente*, No. 12-CR-732(WHP), 2013 WL 4038952, at *2 (S.D.N.Y. July 26, 2013) (requiring government "to provide Jencks Act material in advance of trial to apprise the Defendants of the essential facts"); *United States v. Crosby*, No. 08-CR-186A, 2013 WL 3354422, at *8 (W.D.N.Y. July 3, 2013) (Scott, Mag. J.) ("[pretrial] disclosure of Jencks material" may be required where "essential to the preparation of a defense"); *United States v. Reynolds*, No. 10-CR-32A, 2012 WL 5305183, at *7 (W.D.N.Y. Oct. 25, 2012) (Scott, Mag. J.) ("[E]ven with respect to purely Jencks Act materials, the Second Circuit has stated that 'pre-trial disclosure will redound to the benefit of all parties, counsel and the court , . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided.'") (quoting *United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974)); *United States v. Ruiz*, 702 F. Supp. 1066, 1069 (S.D.N.Y. 1989) ("[D]isclosure of material covered by the Jencks Act may be required, under *Brady* and the due process clause, to be made to the defendant before trial in order that the defendant might prepare and present an effective defense."); *United States v. Gleason*, 265 F. Supp. 880, 887 (S.D.N.Y. 1967) ("[T]he statutory restrictions [of § 3500] must be accommodated to the demands of

due process.").  Nevertheless, the government agrees to disclose "the bulk of its 3500 material" **14** days before trial.  As two weeks would clearly be insufficient time to allow for its effective use of "essential facts" by Defendants at trial, Defendants respectfully request that the Court order the production of such material **45** days prior to trial.

### D. Expert Notice

Fishenko requested that the Court set a schedule directing the government to provide expert disclosure.  In its Opposition, the government agreed to provide expert notice **45** days in advance of trial, but only if defendants agree to provide any expert notice **30** days before trial."  Opp'n at 23.   The Clerk Defendants re-urge their request that the Court order disclosure 90 days before trial, bringing disclosure in line with the witness lists.  Particularly for those defendants relying on CJA funding for their defense, the notion that counsel will be able to identify, obtain court approval for and draft adequate notice for an appropriate expert who can respond the government's noticed expert, all within 15 days, is wholly unrealistic.

The fact of the matter is the government has been investigating this case for years, and it has been pending for almost two.  It should be in a position to identify an expert it intends to call well in advance of 45 days before trial.   The government suffers no prejudice by providing statutorily required expert notice **90** days before trial as the defense requests, aside from perhaps the strategic advantage of crippling the defenses ability to adequately respond to that expert testimony.

### E. *Brady* Material

The government writes that it "is aware of and has already complied, on an ongoing basis, with its obligations pursuant to *Brady*, . . . [and] will continue to comply with its obligation to produce such information in a timely manner."  Opp'n at 23.  The Clerk Defendants read such language to mean that the government will continue to immediately disclose upon receipt all evidence falling within the Clerk Defendants' original motion and mandated by *Brady* and its progeny.  To the extent the Clerk Defendant's misconstrue the government's response, they urge the Court to order such immediate disclosure.  In *Reynolds*, the court recognized that "fundamental fairness and the constitutional due process requirements which underlie *Brady* mandate that the Court have some discretion with respect to

the timing of the disclosure of [documents encompassing both exculpatory and impeachment *Brady* materials], even if it may be considered combined *Brady*/Jencks material."  2012 WL 5305183 at *9.

## CONCLUSION

For the foregoing reasons, Defendants Anastasia Diatlova, Svetalina Zagon, and Sevinj Taghiyeva respectfully renew their request that this Court grant their Motion for: (1) a separate trial pursuant to Federal Rule of Criminal Procedure 14(a); (2) an order striking prejudicial surplusage from the indictment pursuant to Federal Rule of Criminal Procedure 7(d); (3) a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f); and (4) a schedule regarding disclosure of Rule 404(b) Evidence, Jencks Act Material, *Brady* Material, expert disclosure, and the government's exhibit and witness lists.

Dated:  July 14, 2014

Respectfully submitted,

s/ Morris J. Fodeman
Morris J. Fodeman
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel.: (212) 999-5800
Fax: (212) 999-5899
*Attorneys for Defendant Anastasia Diatlova*

s/ Peyton Z. Peebles
Peyton Z. Peebles
CAPITAINE SHELLIST PEEBLES & MCALISTER,
LLP
405 Main Street, Suite 200
Houston, TX 77002
Tel.: (713) 715-4500
Fax: (713) 715-4505
*Attorneys for Defendant Svetalina Zagon*

s/ Sarita Kedia
Sarita Kedia
LAW OFFICES OF SARITA KEDIA
5 East 22nd Street, Suite 7B
New York, New York 10010
Tel: (212) 681-0202
Fax: (212) 614-0202
*Attorneys for Defendant Sevinj Taghiyeva*