

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 15, 2015

By ECF

The Honorable Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re: United States v. Alexander Fishenko et al.,
           Criminal Docket No. 12-626 (S-1) (SJ)

Dear Judge Johnson:

      The government hereby moves in limine to admit certain evidence at the trial of the above-captioned matter, which is scheduled to commence on March 16, 2015. Specifically, the government moves to admit evidence that: 1) defendants Fishenko and Posobilov served in the armed forces of the Soviet Union prior to immigrating to the United States, and that defendant Fishenko lied about his prior military service on his application for refugee status in the United States; 2) defendants Fishenko and Taghiyeva made false statements in connection with their application for Taghiyeva's H1B work visa authorizing Taghiyeva to work at Arc Electronics, Inc. ("Arc"); 3) defendants Posobilov, Taghiyeva and Diatlova forged a letter from a United States manufacturer at the request of a Russian procurement company; and 4) Arc regularly received incoming wire transfers from shell corporations in various high-risk countries with which Arc had no direct business relationships and, on several occasions, this activity resulted in the closure of Arc's United States bank accounts. As set forth below, this evidence is admissible as direct evidence of the charged offenses and, in the alternative, is admissible pursuant to Federal Rule of Evidence 404(b).

I. Background

      During the course of the conspiracy, the defendants, each of whom were employed by or associated with Arc, illegally procured sophisticated microelectronics for Russian clients. Fishenko was President of Arc, Posobilov was Arc's procurement manager, Abdullaev was the shipping manager, and Diatlova, Taghiyeva and Zagon were salespeople who handled client accounts and conducted purchases and sales of microchips.

Communications intercepted during the investigation revealed that a large portion of the technology exported by defendants was destined for Russian military agencies. Specific correspondence recovered during the course of the investigation revealed that the Federal Security Service, Russia's domestic intelligence agency, as well as Russian military entities, were the end users of some of the microelectronics exported by Arc.

Throughout the conspiracy, Fishenko and his co-conspirators systematically evaded export laws and defrauded U.S. manufacturers and suppliers by lying about the actual end users and intended applications of the microelectronics they sought to purchase. In addition, Arc often concealed its function as an exporter and re-seller, falsely claiming on its website and directly to suppliers that it manufactured benign commercial products such as traffic lights, when in fact it manufactured no goods whatsoever. Although Fishenko and his employees sent hundreds of shipments containing thousands of controlled parts to Russia, neither Arc nor its associated entities, principals and employees ever obtained an export license from the Department of Commerce or the Department of State.

Each of the defendants are charged with conspiring to violate the International Emergency Economic Powers Act (50 U.S.C. § 1705) ("IEEPA") and the Arms Export Control Act (22 U.S.C. § 2778) ("AECA"), and to commit wire fraud, all between October 2008 and September 2012, and all in violation of 18 U.S.C. § 371. In addition, the defendants are charged with various substantive IEEPA and AECA offenses. Defendants Fishenko and Posobilov are also charged with obstruction of justice, in violation of 18 U.S.C. §§ 1512(c) and 1519, and conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and (h). Finally, Fishenko is charged with acting as an agent of the Russian government without prior notification to the Attorney General, in violation of 18 U.S.C. § 951.

II. The Relevant Evidence

    A. Fishenko and Posobilov's Military Service

Fishenko immigrated to the United States as a refugee in 1994 on the basis that his wife, Victoria Sorkina (who later became a co-owner of Arc) was subject to religious persecution in Russia. Fishenko was naturalized as a United States citizen in 2003. In documents Fishenko submitted in connection with his original application for refugee status, Fishenko claimed that he had never served in the military. However, photographs and other documents recovered during the course of the investigation reveal that Fishenko did in fact serve in the armed forces of the Soviet Union. Posobilov immigrated to the United States in 2001 and was naturalized in 2008. Photographs and other documents recovered during the investigation reveal that Posobilov also served in the armed forces of the Soviet Union prior to immigrating to the United States.

### B. Taghiyeva's Fraudulent Visa Application

In 2011, Fishenko sponsored Taghiyeva for an H1B visa authorizing her to work in the United States. Taghiyeva, who is a citizen of Azerbaijan, had previously entered the United States in 2009 pursuant to a student visa. The H1B visa program is designed to allow skilled foreign workers to fill jobs in the United States for which there is a shortage of domestic workers. The H1B application submitted by Fishenko and Taghiyeva is replete with false statements. Specifically, a January 19, 2011 letter signed by Fishenko and submitted in connection with the application describes Arc as a "full-service electronic contract manufacturer" that offered "electro-mechanical and printed circuit board assembly[,] . . . complex system assembly and configuration management." In reality, Arc did not manufacture any products nor offer any engineering services, but rather functioned solely as an exporter of components to Russian end users. In addition, the letter falsely described Taghiyeva's position as a "Market Research Analyst," involved in, inter alia, "research methodology and . . . data gathering, such as surveys, opinion polls [and] questionnaires" as well as "forecast[ing] future marketing trends." In fact, Taghiyeva functioned solely as a microelectronics broker, filling orders for Russian clients.

### C. The Forged Letter

In September 2012, a Russian client complained to defendant Diatlova regarding a delay in the shipment of an order of microelectronics that Arc had attempted to purchase from U.S. manufacturer Crystek Corporation via U.S. distributor Mouser Electronics. The client told Diatlova that the order was for a "government contract." Thereafter, on September 24, 2012, Posobilov and Taghiyeva forged a letter from Crystek Corporation using a corporate logo obtained from the internet purporting to explain the delay. The next day, Posobilov emailed this letter to their Russian client.

### D. Arc's Money Laundering Activity

As payment for the microelectronics it shipped to Russia, Arc regularly received incoming international wire transfers from shell corporations that had no apparent connection to the microelectronics industry. These shell corporations were located in jurisdictions known for lax money laundering controls, such as the British Virgin Islands, Belize and Cyprus, and in which Arc had no legitimate business interests or previously existing business relationships. On various occasions, these suspicious transfers caused United States banks to close Arc's accounts.

## III. Discussion

### A. Applicable Standards

Evidence is admissible independent of Rule 404(b) where it constitutes direct evidence of any of the crimes charged in the indictment. See United States v. Carboni, 204

F.3d 39, 44 (2d Cir. 2000); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989). Thus, when the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself. See Thai, 29 F.3d at 812. "An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." Id. at 812 (quoting United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992); see also United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983) ("It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy."). In Towne, the Second Circuit specifically identified three categories of uncharged criminal activity that constitute direct evidence of a charged offense. The court stated:

> [e]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Ev. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'

Id. at 886 (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)). See also United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988) ("The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.").

Even if a Court concludes that certain evidence is not admissible as proof of the charged conspiracy, such evidence may nonetheless be admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. Uncharged crimes or "other" acts are admissible pursuant to Rule 404(b) if relevant to motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. See United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988). The Second Circuit has established a three-prong test for the admission of "other crimes" evidence under Rule 404(b). First, a trial court must determine that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991). Second, the trial court must determine that the evidence is relevant under Rules 401 and 402 and that its probative value is not substantially outweighed by the danger of unfair prejudice. See Pitre, 960 F.2d at 1119; Mickens, 926 F.2d at 1328. Third, the court must provide an appropriate limiting instruction to the jury, if one is requested. See Pitre, 960 F.2d at 1119.

4

While the government "must explain in detail the purposes for which the evidence is sought to be admitted," United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) (citing United States v. O'Connor, 580 F.2d 38, 40 (2d Cir. 1978)), the Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application. Id. ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible."). In addition, the Second Circuit has repeatedly sanctioned the admission of evidence under Rule 404(b) to provide background information relating to the crimes charged. See Pitre, 960 F.2d at 1119 (uncharged crimes evidence admissible "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed"); United States v. Williams, 205 F.3d 23 (2d Cir. 2000) (same).

### B. The Evidence is Admissible

First, evidence of Fishenko and Posobilov's Soviet military service, and of Fishenko's concealment of that service to United States immigration authorities, is probative of their knowing participation in the charged conspiracy to illegally provide controlled technology to the Russian military. The superseding indictment alleges that the defendants "devised and executed a scheme to obtain controlled microelectronics from United States-based manufacturers and distributors and export those commodities to . . . Russian military and intelligence agencies." (Superseding Indictment at ¶ 10). The fact that both Fishenko and Posobilov previously served in the Soviet military is relevant to their intent and ability to engage in the charged conduct. In addition, Arc operated in a surreptitious manner, disguising the true nature of its business to suppliers and regulators. This is consistent with Fishenko's concealment of his prior military service at the time of his emigration to the United States. Lastly, Fishenko is charged with acting as an agent of the Russian government by procuring technology for Russian government end users without proper notification to United States authorities. His concealment of his ties to the Soviet military is also directly probative of that offense.

In addition, the false statements within Taghiyeva's visa application are also directly relevant to the charged conspiracy. Indeed, the Superseding Indictment alleges that "in order to obtain microelectronics . . . the defendants provided materially false information regarding Arc's export function." (Superseding Indictment at ¶ 18). The defendants often lied to manufacturers and suppliers, claiming to be a "contract manufacturer" rather than a reseller of microelectronics. Indeed, Fishenko even kept a prototype of a traffic light in his office in order to support the ruse that Arc engaged in manufacturing. Thus, the false description of Arc's business model in Taghiyeva's visa application is direct evidence of this fraud. In addition, the false description of Taghiyeva's duties as a "Market Research Analyst" served to disguise the fact that Arc functioned wholly as a reseller of electronic components to Russia, filling discrete orders by clients rather than engaging in any design, engineering, or marketing work as it purported to do in her application and on its website.

Next, Diatlova, Posobilov and Taghiyeva's involvement in forging a letter from a U.S. company in order to placate a client regarding a Russian government order are probative of their participation in the charged conspiracy. These defendants and their coconspirators often provided false end use and end user information to suppliers and manufacturers in the United States, including by forging letters and other documents. The fact that these defendants intentionally forged a letter on this occasion is indicative of their fraudulent business practices, their willingness to falsify documents to obtain a commercial advantage and their knowing and intentional participation in the conspiracy to defraud suppliers and evade export controls.

Finally, Arc's receipt of wire transfers from shell corporations in high risk money laundering jurisdictions, and the banks' actions in response to these suspicious transactions, is directly probative of the charged money laundering conspiracy. In Count Seventeen of the Superseding Indictment, Fishenko and Posobilov are charged with conspiring with their Russian clients to transfer funds from Russia to the United States to promote their ongoing evasion of export controls. Thus, these suspicious transfers –which represent the proceeds of the defendant's scheme – are direct evidence of the existence of this conspiracy.

IV.  Conclusion

For the reasons set forth above, the government respectfully submits that this evidence should be admitted.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:     /s/ Daniel Silver
Daniel Silver
Hilary Jager
Una Dean
Assistant U.S. Attorneys
(718) 254-6034